Breen v. St. Louis Transit Co.

---

## BREEN, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

**St. Louis Court of Appeals, November 17, 1903.**

1. **Carrier of Passengers: EJECTING PASSENGER: ELEMENTS OF DAMAGES.** In an action for wrongful ejection from defendant's car, physical pain though slight, and such mental suffering as must naturally result from the injuries inflicted, are proper elements of damages.

2. ———: ———: ———. The honest expression of opinion of a conductor, that money offered him as fare is counterfeit, and his refusal to accept same for that reason, without imputing to the passenger a crime or dishonest motive, is not a tort, and no element of damages in an action for wrongful ejection of passenger.

3. ———: ———: EVIDENCE OF CHARACTER NOT ADMISSIBLE. Evidence of the good character of a passenger wrongfully ejected from defendant's car, is not admissible, in an action for damages for such wrongful ejection.

4. ———: ———: RIGHT OF PASSENGER TO RESIST EJECTION. Plaintiff, who was rightfully on board defendant's car, and had tendered and continued to tender .his fare in lawful money, had a right to protest and reasonably resist ejection, and forfeited none of his rights to recover damages thereby.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

REVERSED AND REMANDED.

*Boyle, Priest & Lehmann* and *Geo. W. Easley* for appellant.

(1) The first instruction given for plaintiff authorized a recovery for shame, mortification and mental anguish. Such an instruction is erroneous. Spawn v. Railroad, 116 Mo. 632-633; Grayson v. St. Louis Transit Co. (decided by Court of Appeals, not yet reported); Church v. Bridgman, 6 Mo. 190; Long v. Dunleavy, 80 Mo. 558. (2) The second instruction refused for defendant should have been given. Logan v. Railroad, 77 Mo. 669; Railroad v. Parks, 18 Ill. 460; Woods v. Railway, 48 Mo. App. 132; Keen v. Railway (Mich.), 81 N. W. 1085; Bradshaw v. Railroad, 135 Mass. 410; Kiley v. Railroad (Ill.), 9 Am. Neg. Rep. 481; Pouilin v. Railroad, 52 Fed. 199; Railroad v. Bennett, 50 Fed. 501; Mozier v. Railroad, 127 U. S. 390; Boylan v. Railroad, 132 U. S. 146.

*Joseph A. Wright* for respondent.

(1) The serious charge made against the plaintiff created a presumption of law as to its injurious effect, and that his character had been damaged without requiring any allegation of especial loss or damage. 5 Ency. of Pleading and Practice, 763-765; Nicholson v. Rogers, 129 Mo. 136, 140; Lewis v. McDaniel, 82 Mo. 581; Noeninger v. Vogt, 88 Mo. 591; Pennington v. Meeks, 46 Mo. 220; Birch v. Benton, 26 Mo. 159; Butts v. Long, 68 S. W. (Mo. App.) 754; Berger v. Railway, 71 S. W. (Mo. App.) 102; Chesley v. Thompson, 137 Mass. 137. (2) Where a statement made is shown to be false and the party wronged has been falsely accused of a crime, the words are actionable per se and the law implies malice. Hudson v. Garner, 22 Mo. 423; Weaver v. Hendrick, 30 Mo. 505; Buckley v. Knapp, 48 Mo. 159; Callahan v. Ingram, 122 Mo. 355; Bryan v. Collins, 111 N. Y. 143, 2 L. R. A. 129. (3) The second instruction

asked by appellant does not properly declare the law. Curtis v. Railroad, 94 Ky. 573, 21 L. R. A. 649; Wisley v. Railroad, 83 Ky. 511; Pettiplace v. Railroad, 84 Wis. 412, 20 L. R. A. 483; White v. Railway, 26 W. Va. 80; Railroad v. Holdbridge, 118 Ind. 281; Perry v. Railway, 153 Pa. St. 236. (4) A corporation is liable for slander spoken by its agents while acting within the scope of their duties. 1 Clark and Marshall on Private Corporations, 627, 628; 1 Cook on Corporations, par. 15 b, p. 64-71; Hussey v. Railroad, 98 N. C. 34; Washington Gaslight Co. v. Lansden, 172 U. S. 534; West Virginia Transportation Co. v. Standard Oil Co., 50 W. Va. 611; Hoboken Printing Co. v. Kahn, 59 N. J. L. 218; Fogg v. Railroad, 148 Mass. 513; Boogher v. Life Association of America, 75 Mo. 319; Childs v. Bank, 17 Mo. 213; Gillett v. Railroad, 55 Mo. 315; Woodward v. Railway, 85 Mo. 142; State ex. inf. v. Ins. Co., 152 Mo. 38; Meade v. Railway, 68 Mo. App. 92; Southern Express Co. v. Platten, 93 Fed. 939; Newell on Slander and Libel (1898), 376; Odgers on Libel and Slander, 312; 2 Morawetz on Private Corporations (2 Ed.), par. 727.

## STATEMENT.

Omitting caption the petition is as follows:

"That at about two o'clock in the afternoon of the twenty-third day of March, 1902, the plaintiff at the corner of Delmar and Taylor avenues, entered one of defendant's east-bound cars then being operated on said Olive street line with the intent and for the purpose of being carried on said car as a passenger; that after entering said car, the conductor thereof, appointed by and in the employ of defendant, asked the plaintiff for payment of his fare, and thereupon plaintiff tendered said conductor a certain one-dollar bill, lawful money of the United States, and requested said conductor to take plaintiff's fare, amounting to five cents, out of said dollar bill; that said conductor refused to accept said dol-

lar bill, and to take plaintiff's fare therefrom, though plaintiff repeatedly tendered the same to said conductor for said purpose.

"That said conductor in the presence of numerous passengers on said car falsely and maliciously charged plaintiff whenever he presented said dollar bill in payment of his fare, with attempting to pass counterfeit money.

"That though plaintiff offered to pay his fare in manner aforesaid, the said conductor, as the agent of defendant, refused to carry plaintiff, and at the corner of Olive street and Grand avenue, in said city, forcibly expelled him from said car.

"That in so doing the defendant, through its conductor, committed an assault and battery of a high and aggravated nature upon the plaintiff by forcibly pulling him from his seat to the back platform of said car and then pushing him off said platform into the street in the presence of numerous passengers, and injuring the reputation of the plaintiff by representing to them that he was trying to cheat the defendant company by attempting to pass counterfeit money in the payment of his fare, thereby charging plaintiff with attempting to perpetrate a fraud upon defendant, and imputing to him the crime of attempting to pass counterfeit money.

"Plaintiff therefore says he has been injured and damaged by the defendant by the aforesaid acts to the amount of $1,000, for which sum he asks judgment.

"Plaintiff also asks judgment for exemplary or punitive damages against defendant in the sum of $3,000, in addition to the actual damages prayed for."

The answer of the defendant was a general denial, with the following special defense:

"And for further answer and defense, defendant says, that said plaintiff tendered in payment of his fare what purported to be a one-dollar bill, and the conductor, believing said bill to be counterfeit and spurious, refused to take the same, and in good faith demanded

of plaintiff payment of his fare in other money, which said plaintiff then and there refused to pay, and said defendant's conductor then and there demanded that said plaintiff should quit the car, which said plaintiff then and there refused to do, and required and compelled said conductor, for the sole purpose of laying a seeming foundation for this suit, to make a show of force in putting said plaintiff off said car, which said. conductor then and there did, using, however, no unnecessary force and doing no injury to the plaintiff whatever.

"And having fully answered, defendant asks to be discharged with its costs."

Plaintiff's reply was a general denial.

Plaintiff, in his own behalf, testified substantially as follows:

"That he was an employee of the postoffice department; that on Sunday, the twenty-third day of March, 1902, at about 2 o'clock p. m., he went to Delmar and Taylor avenues for the purpose of taking an Olive street. car. His 'intention was to walk to where he was going.' He was going to Twenty-ninth and Pine streets to a rehearsal for a concert to be given for the benefit of the Letter Carriers' Band. At Delmar and Taylor avenues he boarded an Olive street car. The conductor came for his fare; plaintiff offered him a one-dollar bill.

"Q. What did the conductor say to you when you presented this dollar bill? A. He looked at the bill, and turned it over two or three times and handed it back, and he said, 'I can't use that;' and I said 'Why?' He said, 'It is counterfeit,' and I said, 'I think you are mistaken.' He said, 'No, I know I ain't.' He said, 'It is a counterfeit,' and I said, 'No, it is not.' He said, 'It is a counterfeit and I won't take it.' So he went through the car and collected a few more fares, and he came back to me again and requested my fare. I offered him the same dollar bill; and he said, 'No, I can't take that, that is a counterfeit.' I said, 'No, sir; it is not.' He said,

'I know it is.' I said, 'If you are so positive of its being counterfeit why don't you have me arrested for trying to pass it?' He said, 'No, I won't do that.' I said, 'That is all I have got, and I want to pay my fare with it,' and he said, 'Well, I can't take that, it is a counterfeit, and you will have to get off.' I took the bill and put it in my pocket again, and he went out on the back platform. I heard somebody remark, 'Take the number of the bill.'

"After talking with the passengers on the back platform the conductor came back again and said to the plaintiff, 'Let me look at that bill again.' Plaintiff handed him the bill, and he went out on the back platform with it, and brought it back and said, 'I can't use that, it is a counterfeit.' He said, 'I know good money when I see it.' He said, 'On the back, that what is supposed to be silk threads in it, that is done with pen and ink.' The plaintiff insisted that the money was good and the conductor that it was bad, and finally the conductor said, 'Well, I won't take it, you will have to get off,' and the plaintiff said, 'No, sir, I will not get off, because I am willing to pay, and I don't see why I should get off,' and the conductor then said, 'Well, then I will put you off,' and the plaintiff turned to the gentleman who was sitting in the seat with him, and said: 'Will you kindly let me have your name?' The gentleman's name was Mr. Melville, who made a memorandum of the number of the bill; after which the conductor said, 'Well come on and get off,' and the plaintiff said, 'No, sir; I am not going to get off because I am willing to pay.' The conductor then said he would put plaintiff off, and the plaintiff says that he grabbed him by the arm and pulled him out of the seat and pushed him out on the back platform, and he said, 'Get off,' and the plaintiff said, 'No, sir; I am willing to pay, and I don't see why I should get off,' and with that the conductor shoved the plaintiff off the car, and said, 'The next time

you get on these cars have United States money with you.'"

He stated that he felt some pain from the grip of the conductor when he took hold of his arm. He further testified that he was an employee of the United States postal department; that the bill he tendered the conductor was paid him by the department and that in his judgment it was a genuine bill; that it was all the money he had about his person on the occasion, and that he told the conductor that it was all the money he had.

He further testified that he had never been arrested or accused of crime; that no profane or loud language was used by the conductor, and that there was no quarrel; that he had no previous acquaintance with the conductor.

The one-dollar bill was produced, identified and proved to be genuine.

A. B. Melville, who was in the car with plaintiff, corroborated plaintiff's evidence in regard to what took place in the car between plaintiff and the conductor and stated that the conductor took plaintiff by the arm, pulled him from the seat, led him to the rear platform and pushed him off the car, but that he used no more force than was necessary to eject plaintiff from the car, and that plaintiff used no more resistance than was necessary to show his unwillingness to leave the car.

Over the objection of the defendant, plaintiff was permitted to prove that he was a man of good character.

On the part of the defendant, the evidence was that the one-dollar bill in question was old and worn; that bills of its kind were no longer issued, and there were but few of them in circulation and that one who was not an expert might be honestly mistaken as to the genuineness of the bill; that the conductor examined the bill closely, took it out to the rear platform of the car where the light was better, examined it there and submitted it to W. J. Hagenbush, a passenger, for examination, who advised him not to take it.

The conductor testified that when he asked plaintiff to get off the car he merely took him by the sleeve of his coat; that he did not grip his arm at all; that when he took hold of plaintiff's sleeve plaintiff got up and followed him to the rear platform and there got off; that he did not shove or push him off and said nothing to him when he got off; that he honestly believed the one-dollar bill was a counterfeit and refused to take it for that reason.

W. J. Hagenbush testified that plaintiff was not shoved or pushed off the car and that the conductor said nothing to him when he got off.

For plaintiff the court instructed the jury as follows:

"1.    The court instructs the jury that if the jury believe from the evidence that the plaintiff, on or about the twenty-third day of March, 1902, entered one of defendant's east-bound cars then and there being operated on the Olive street line of the defendant, with the intent and for the purpose of being carried on said car as a passenger; and that after entering said car, the conductor thereof, and appointed by and in the employ of defendant, asked the plaintiff for payment of his fare and thereupon plaintiff tendered said conductor a certain one-dollar bill introduced in evidence, and that the same is and was lawful money of the United States, and that plaintiff requested said conductor to take his fare, amounting to five cents, out of said dollar bill, and that said conductor refused to accept said dollar bill, and to take plaintiff's fare therefrom; and that plaintiff repeatedly tendered said dollar bill to said conductor in payment of his fare, and that said conductor in the presence of numerous passengers on said car, falsely and maliciously charged plaintiff whenever he presented said dollar bill in payment of his fare, with attempting to pass counterfeit money; and that though plaintiff offered to pay his fare in said manner, and said conductor refused to carry plaintiff on said car, and at the

corner of Olive street and Grand avenue, in said city, forcibly expelled plaintiff from said car and that in expelling plaintiff from said car the said conductor assaulted plaintiff by forcibly pulling him from his seat to the back platform of said car, and then pushing him off said car into the street in the presence of numerous passengers; and that said conductor meant and intended in charging plaintiff with attempting to pass counterfeit money to thereby charge plaintiff with attempting to defraud the defendant, and to impute to plaintiff the crime of attempting to pass counterfeit money; and that thereby, and as the direct result of said alleged acts of said conductor, the plaintiff suffered shame and mortification, pain and injury to his body and feelings, and mental anguish, and injury to his reputation; then you will find your verdict in favor of the plaintiff and against the defendant company, and assess his actual damages in such sum as you believe, from the evidence, will fairly and reasonably compensate him for any damages he sustained thereby, not exceeding the sum of $1,-000; and if the jury further believe from the evidence that the said alleged acts of the conductor referred to in this instruction were done by him in malice toward the plaintiff, then the jury may add to such actual damages, if any, so found in favor of plaintiff, an additional sum not exceeding $3,000, as punitive damages, if they think, under all the circumstances of the case, punitive damages ought to be so found by them, and by punitive damages is meant such sum as will justly punish the defendant for the said wrongful acts of its said conductor (if you find he did said wrongful acts) and as will be an example to deter others from committing such an act, and if the jury find in favor of the plaintiff as to punitive damages they will so find, and assess the amount thereof separately, and separately so state in their verdict.

"2. The court instructs the jury that by the use of the word malice in these instructions is meant ill will, or a desire to be avenged, and in passing upon the ques-

tion of malice and the other matters referred to in the instructions the jury should take into consideration all the facts and circumstances in evidence, and all the evidence as detailed by the witnesses.

"3. You are further instructed that if you find and believe from the evidence that the conductor in charge of defendant's car, when plaintiff presented the one-dollar bill introduced in evidence, in payment of his fare, falsely charged plaintiff with attempting to pass counterfeit money, then the law will imply that said conductor maliciously charged the plaintiff with the crime of attempting to pass counterfeit money."

The following instruction asked by defendant was refused by the court:

"2. Even if the jury do find from the evidence, under the instructions of the court, that the plaintiff tendered good money in payment of his fare, and that the conductor had no legal right to refuse the same, still those facts would only authorize the plaintiff to pay his fare in other money or quit the car and sue for and recover fair compensation for the damages actually sustained by him for the wrong of the conductor; and if you believe from the evidence that by such course the plaintiff could have avoided the alleged shame and mortification of a public expulsion, but chose, rather than to take that course, to resist the demands of the conductor to the extent of requiring the use or show of force for his removal from the car, then he subjected himself to whatever mortification he suffered from being publicly removed from the car, and that is a matter not to be considered by you in estimating his damages for such expulsion."

Ten of the jurymen agreed to return the following verdict:

"We, the jury, in the above entitled cause, find for plaintiff in the sum of two hundred and fifty dollars actual damages, and in the sum of no dollars punitive or exemplary damages."

Timely motions for new trial and in arrest of judgment were filed by defendant which were by the court overruled. Plaintiff appealed.

BLAND, P. J. (after stating the facts as above).— 1. The questions of malice and oppression were eliminated from the case by the refusal of the jury to assess any punitive damages. Viewing the evidence in its most favorable aspect for the plaintiff, we have for consideration simply a case of unjustifiable assault and battery without express malice or of any actual intention to commit a legal wrong—the wrongful and forcible ejection of a passenger from a street car by the conductor in the mistaken but honest belief that he was doing his duty. The bodily pain caused by the battery, according to plaintiff's own evidence, was slight, but it was appreciable and sufficient to constitute an element in the estimation of the damages, and was properly submitted to the jury as an element of the damages. Having adduced evidence of the assault and battery and thus proven the tort, all the circumstances attending the assault and battery were proper for the consideration of the jury, and in estimating plaintiff's damages they were authorized to take into account, not only his physical pain, but also such mental suffering as they were satisfied must have been the natural result of the injuries inflicted. West v. Forrest, 22 Mo. 344; Porter v. Railroad, 71 Mo. 66; Brown v. Railroad, 99 Mo. 310; Cook v. Railroad, 19 Mo. App. 329; Deming v. Railroad, 80 Mo. App. 152; Railroad Co. v. Barron, 72 U. S. 90; Kennon v. Gilmer, 131 U. S. 22; Smith v. Holcomb, 99 Mass. 552; Ferguson v. Davis County, 57 Iowa 601; South and North Alabama R. R. Co. v. McLendon, 63 Ala. 266; The Pennsylvania and Ohio Canal Co. v. Graham, 63 Pa. 290.

Instruction No. 1, given for plaintiff, went further than to tell the jury that they should take into consideration the facts and circumstances attending the as-

sault and expulsion of plaintiff in estimating the damages. It detailed these circumstances and then instructed that if "said conductor meant and intended in charging plaintiff with attempting to pass counterfeit money to thereby charge plaintiff with attempting to defraud the defendant, and to impute to plaintiff the crime of attempting to pass counterfeit money; and that thereby, and as the direct result of said alleged acts of said conductor, the plaintiff suffered shame and mortification," etc. This was not only a comment on the evidence, but had the effect to inject into the case an element of damages in actions for verbal slander. The slander attempted to be alleged, and which is carried into the instruction, is the crime of an attempt to pass counterfeit money. The allegations of the petition are insufficient to charge that offense for the reason the offense can not be committed unless the person who makes the attempt knows at the time he makes the offer, that the money he offers to pass as genuine is in fact counterfeit. Scienter must be both alleged and proved; it is not alleged in the petition, nor is there a word in the evidence that the conductor charged the plaintiff with an attempt to pass upon him a counterfeit one-dollar bill, knowing it to be counterfeit. All it does show, is that the conductor insisted that the bill was counterfeit, while plaintiff maintained it was genuine and neither would yield his opinion. There is not a word of evidence that the conductor accused the defendant of trying to pass the bill knowing it to be counterfeit, or that he accused the plaintiff with any bad motive in offering to pass the bill, nor do the words spoken by the conductor to the plaintiff impute to the latter a crime or a dishonest motive, yet the jury was authorized to mulct the defendant in damages because the conductor, as plaintiff's own evidence shows, refused to receive in payment of plaintiff's fare, money that he honestly believed to be spurious. The defendant company is liable to answer in damages for the willful and malicious torts of its agents

committed within the scope and course of their employ-ment, but the honest expression of the opinion of a con-ductor of a car or train of cars that money offered to him in payment of a fare is counterfeit and his refusal to accept it for that reason, is not a tort, though he be mistaken in his judgment of the money, and the question of whether or not the company would be liable, had verbal slander been charged and proven, is not in the case.

2. The plaintiff's character was not attacked, was not put in issue by the pleadings, and it was not essen-tial that he should prove it to entitle him to recover; nor was it an element in the estimation of his damages, for the measure of damages for a wrongful and unjustifi-able assault and battery upon a man of good character is the same for a like assault upon a man of bad char-acter, and defendant's objection to the evidence of plain-tiff's good character should have been sustained.

3. In respect to defendant's refused instruction, we do not think it properly declared the law. It is not the law that it was plaintiff's duty to leave the car when he was told to do so by the conductor, in the circumstan-ces proven in this case. Defendant was a public car-rier of passengers for hire; plaintiff was rightfully aboard the car, had tendered and continued to tender lawful money to pay his fare, and he was at no time in the wrong and unquestionably had the right to remain upon the car until he should arrive at his destination; being in the right and the conductor in error, he had a right to object, protest and reasonably resist his expul-sion from the car, and forfeited none of his rights to re-cover damages by resisting, within lawful bounds, the wrong and indignity perpetrated upon him by the con-ductor in ejecting him from the car. It is not the law that one must submit to wrong for fear that he will lose some of his rights; on the contrary, he may man-fully assert his rights and make all lawful efforts to maintain them.

The cases of Logan v. Railroad, 77 Mo. 1. c. 669, and C. B. & Q. R. R. v. Parks, 18 Ill. 460, cited and relied upon by defendant as supporting its refused instruction, have no application to the facts in this case. In those cases the complainants were wrongfully on the cars of the railroad company; had they been rightfully there, another proposition would have been before the courts, and we think a very different conclusion would have been reached.

For the errors above noted, the judgment is reversed and the cause remanded. *Reyburn* and *Goode, JJ.*, concur.

