BREEN, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, November 29, 1904.

1. **CARRIERS OF PASSENGERS: Ejecting Passenger: Right of Passenger.** A passenger on a street car who had tendered his fare in lawful money which the conductor in good faith refused, believing the money to be counterfeit, had a right to object and reasonably resist expulsion from the car; if ejected, he had a right of action against the company for expulsion, though no unnecessary force was used in expelling him.

2. ———: ———: ———: **Limit of Right.** But the passenger's right to remain upon the car, under the circumstances, did not give him the right to fight the conductor or resist ejection in a manner that would lead to a disturbance of the peace of the other passengers.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*Geo. W. Easley* and *Boyle, Priest & Lehmann* for appellant.

*Joseph A. Wright* for respondent.

BLAND, P. J.—This is the second appeal of this case. On the first appeal the judgment was reversed and cause remanded for error in instructions given for plaintiff. On the second trial, the verdict was again for plaintiff, the damages being assessed at seventy-five dollars. After taking the usual steps to preserve its exceptions, this appeal was taken. The error assigned and discussed on the oral argument and in the briefs of appellant consists in the refusal of the trial court to give the following instruction:

"The jurors are instructed that although you may believe and find from the evidence that the plaintiff tendered good and lawful money in payment of his fare and that the conductor had not the legal right to refuse the same, those facts would only authorize the plaintiff to pay his fare or quit the car and sue for and recover fair compensation (including another fare, had he paid the same, and it was wrongfully demanded) for such wrong, and if you believe and find from the evidence that by such course the plaintiff could have avoided his alleged shame and mortification of a public expulsion, rather than to take that course, to resist the demands of the conductor to the extent of requiring the use or show of force for his removal from the car, then he subjected himself to whatever mortification he suffered from being publicly removed from the car, and that is not a matter to be considered by you in estimating his damages for such explusion."

The facts developed on the second trial are not materially different from those shown on the first. They are fully set out in Breen v. St. Louis Transit Company, 102 Mo. App. 479, 77 S. W. 78, and need only a brief recapitulation here. Succinctly stated, they are

as follows: Breen boarded a car of defendant and offered a good one-dollar bill (all the money he had about his person) to the conductor for him to take out the usual fare. The conductor, honestly believing the money offered was counterfeit, refused to take it. Breen insisted that the bill was genuine but was unable to convince the conductor of the fact and was told by the latter that he would have to pay his fare with other money or leave the car. Breen was unable to tender other money, for the reason, as he informed the conductor, he had no other money on his person, and refused to leave the car. The conductor had the car stopped, took Breen by the arm and put him off with some show of force.

On the first trial, the court refused the following instruction:

"1. Even if the jury do find from the evidence, under the instructions of the court, that the plaintiff tendered good money in payment of his fare, and that the conductor had no legal right to refuse the same, still those facts would only authorize the plaintiff to pay his fare in other money or quit the car and sue for and recover fair compensation for the damages actually sustained by him for the wrong of the conductor; and if you believe from the evidence that by such course the plaintiff could have avoided the alleged shame and mortification of a public expulsion, but chose, rather than to take that course, to resist the demands of the conductor to the extent of requiring the use or show of force for his removal from the car, then he subjected himself to whatever mortification he suffered from being publicly removed from the car, and that is a matter not to be considered by you in estimating his damages for such expulsion."

In respect to this instruction, we said: "It is not the law that it was plaintiff's duty to leave the car when he was told to do so by the conductor, in the circumstances proven in this case. Defendant was a pub-

lic carrier of passengers for hire; plaintiff was rightfully aboard the car, had tendered and continued to tender lawful money to pay his fare, and he was at no time in the wrong and unquestionably had the right to remain upon the car until he should arrive at his destination; being in the right and the conductor in error, he had a right to object, protest and reasonably resist his expulsion from the car, and forfeited none of his rights to recover damages by resisting within lawful bounds, the wrong and indignity perpetrated upon him by the conductor in ejecting him from the car. It is not the law that one must submit to wrong for fear that he will lose some of his rights; on the contrary, he may manfully assert his rights and make all lawful efforts to maintain them." Breen v. St. Louis Transit Company, 102 Mo. App. l. c. 491, 77 S. W. 78.

Appellant's counsel insist that this paragraph of the opinion is erroneous and means "fight; fights, too, aboard a street car when there are women and children aboard," and insist that we retract what is there said and announce as the law that a passenger, however rightfully aboard a street car, must, rather than take the chance of disturbing the peace of the passengers, when asked to leave the car by the conductor for any cause, yield his right to remain aboard and quietly and meekly leave the car and then sue the company for damages, if he feels aggrieved; that if we cannot go this far then we should so modify the opinion as to extract its supposed virus. A long list of authorities are cited bearing upon the rights and duties of passengers aboard trains and street cars when ordered to get off by the conductor.

In Railroad v. Griffin, 68 Ill. 499, speaking of the duties of conductors and passengers, at pages 504-5, the court said:

"The conductor must necessarily have the supervision and control of the train, otherwise there would

be no protection to the lives or comfort of the public travel. If he abuses his trust, or for any gross misconduct on the part of himself or other employee towards passengers, the company will be responsible. The law requires the highest degree of care on the part of all railroad employees on passenger trains, for the comfort and safety of the passengers. It is incumbent on them to be civil and decorous in their conduct towards them.

"But like responsibilities rest upon passengers. They must observe proper decorum, and be submissive to all reasonable rules established by the company. The law will not permit a passenger to interpose resistance to every trivial imposition to which he may really feel or imagine himself exposed by the employees, that must be overcome by counterforce in order to preserve subordination. It is due to good order and the comfort of the other passengers that he should submit for the time being, and redress his grievances, whatever they may be, by a civil action. A party will be entitled to quite as much damage for any wrong or injury quietly endured as if violently resisted; indeed, the policy of the law ought to be to award him a higher measure of damages."

In Railroad v. Connell, 112 Ill. 295, it was ruled:

"Where a conductor of a railway company, acting under instructions from his superior, refuses to accept a ticket issued by another company as agent of the former, and demands full fare, the passenger, if his ticket was issued by authority, may pay the fare again, and recover of the company requiring payment the sum paid, as for a breach of contract, or he may refuse to pay, and leave the train when so ordered by the conductor, and sue and recover of the company all damages sustained in consequence of his expulsion from the train; but if he refuses to leave, he can not recover for the force used by the conductor in putting

him off, when no more force is used than necessary, and the expulsion is not wanton or willful."

In McKay v. Railroad, 34 W. Va. 65, it was held: "If a passenger pay a railroad agent fare for a certain trip, and by mistake of the agent is given a ticket not answering for that trip but one in an opposite direction, and the conductor refuses to recognize such ticket and demands fare, which the passenger fails to pay, ejection of the passenger from the train without unnecessary force will not be a ground of action against the company as for a tort; but the action must and may be based on the breach of the contract to convey the passenger."

In Hufford v. Railroad, 53 Mich. 118, it was held: "A railway passenger ticket is conclusive evidence, as between the passenger and the conductor, of the extent of the passenger's right to travel. And though if the ticket is apparently good the passenger has a right to rely on it and refuse to leave the train if the conductor requires him to do so as an alternative to paying his fare, the safer way is to pay the fare and afterwards hold the company responsible for the refunding of the money so paid and for compensation for any trouble he may be put to in getting it."

In Van Dusen v. Railway, 97 Mich. 439, it is said: "Plaintiff purchased a ticket entitling him to transportation over defendant's road from Detroit, via Port Huron, to Trenton, Canada, and return. The conductor of the Detroit and Port Huron division took up the going portion of the ticket, but failed to give plaintiff a check as evidence of his right to ride from Port Huron to Trenton, as required by the rules of the company. Plaintiff refused to pay his fare over the Port Huron and Trenton division. The conductor refused to recognize the return coupon as evidence of such payment, and ejected plaintiff from the train without unnecessary force, and plaintiff sued defendant in case for such ejection. It is held that it

was the duty of plaintiff to leave the train peaceably or pay his fare, and seek his remedy for damages resulting from either necessity as the situation at the time required; and that a recovery was properly limited to the value of the ticket of which he had been wrongfully deprived by the first conductor, it appearing that plaintiff had the money with which to pay his fare, and afterwards paid it, and completed his journey by a later train."

In Kiley v. Railway, supra, 9 Am. Neg. 476, it is said:

"In an action to recover damages for forcible expulsion of plaintiff, a passenger, from one of defendant's street cars, it appeared that plaintiff was given a wrong transfer slip by a conductor of a branch line, which transfer she tendered to the conductor of a car on the connecting line, but the conductor refused to accept same and requested plaintiff to pay fare or get off the car, and on her declining to do either the conductor stopped the car and ejected her therefrom. Held, that plaintiff should have either paid fare or left the car in a peaceable manner, seeking redress in the courts for damages sustained, and was not entitled to recover for injuries sustained in being compelled to leave the car."

In Erie Railroad Co. v. Littell, 128 Fed. 546, it was held that a passenger who is rightfully on a railroad train has the right to refuse to be ejected from it and to make sufficient resistance to denote that he is being removed by compulsion and against his will, and the fact that he was put off the train, under such circumstances, was of itself a good cause of action against the company, irrespective of any physical injury he may have received at the time or which was caused thereby, citing in support English v. Canal Co., 66 N. Y. 454; Brown v. Railroad, 7 Fed. 51; Railroad v. Rice, 64 Md. 63.

In Railroad v. Winter's Admr., 143 U. S. 60, the facts were as follows:

"Plaintiff bought a ticket in Boston entitling him to a passage over defendant's road. At the time he informed the ticket agent of his wish to stop off at Olean station, and was then told by the agent that he would have to speak to the conductor about that. Between Binghamton and Olean the plaintiff informed the conductor that he wished to stop over at Olean and the conductor, instead of giving him a stop-over ticket, punched his ticket and told him that was sufficient to give him the right to stop over at Olean, and afterwards to use the punched ticket between Olean and Salamanca. He made the stop, and taking another train to Salamanca, presented the punched ticket, informing the conductor of what had taken place. The conductor refused to take it and demanded full fare. The payment of this being refused, the conductor stopped the train at the next station and ejected him from it, using such force as was necessary. Held, (1) that he was rightfully on the train at the time of his expulsion; (2) that the conductor had no right to put him off for not paying his fare; (3) that the company was liable for the act of the conductor; (4) that the passenger had a right to refuse to be ejected from the train, and to make a sufficient resistance to being put off to denote that he was being removed against his will by compulsion; (5) that the fact that under such circumstances he was put off the train was, of itself, a good cause of action against the company, irrespective of any physical injury he might have then received, or which was caused thereby."

In Railway v. Keeny, 99 Ga. 266, it was held:

"A genuine silver coin of the United States, distinguishable as such, though somewhat rare and differing in appearance from other coins of this government of like denomination and of later dates, is never-

theless a legal tender for car fare,) and a passenger ejected for refusal to make payment otherwise than by tendering such a coin, is entitled to an action for damages." It was further held that the fact that the conductor declined to receive the coin of the character tendered because he, in good faith, believed it was counterfeit, did not relieve the company from liability, and if the conductor used insulting language and was "very impolite and gruff" in ejecting the passenger, such conduct warranted a charge for vindictive damages.

In Railroad v. Morgan, 52 N. J. Law Rep. 60, it was held: "A genuine silver coin, worn smooth by use, not appreciably diminished in weight, and distinguishable, is a legal tender for car fare; and if ejected for refusal to make other payment, the passenger may have an action for damages."

In Jacobs v. Railroad, 75 N. Y. Sup. 679, it was held that the good faith of the conductor in refusing to receive a valid transfer ticket was no defense in an action for wrongfully ejecting a passenger.

In Ruth v. St. Louis Transit Co., 98 Mo. App. 1, 71 S. W. 1055, we held that when a passenger on a street car tendered the exact amount of his fare in a legal tender coin, the conductor had no right to reject it because he honestly believed it not to be a good coin and demanded payment in other coin and then eject the passenger for refusing to pay in other coin; that in such circumstances the passenger has a right to stay on the car and if forcibly ejected may recover damages of the company. This doctrine is supported by sound reason, by the federal cases and by some of the state cases herein cited.

The Illinois cases, and some from other States, holding that a passenger should retire from the car when ordered to do so by the conductor, notwithstanding the fact he is rightfully on the car and had a right to remain until his destination is reached, seem to us

to require an unreasonable submission to wrong and are not in consonance with the universal rule of law applicable to every condition in life, to-wit, that every one has the right to defend his person, his property and his legal rights within reasonable bounds when an unlawful attempt is made to deprive him of any one of them. But to maintain his right to remain upon a street car or railroad train after he has paid or tendered his fare, a passenger has no right to fight the conductor to prevent being ejected, for the reason that a fight would disturb the innocent passengers aboard the car, but he does have the right to so far resist ejection as to make it manifest that he is being put off by compulsion and against his will and this is all that is meant by the expression "he may manfully assert his rights and make all lawful efforts to maintain them" found in the body of the opinion on the former appeal, not that he may fight the conductor or in any other manner disturb the peace of other passengers. To offer violence which would lead to a disturbance of the peace, to prevent his ejection from the car, would be to resort to unlawful means in the defense of his right to stay on the car.

We conclude that the wrongful ejection of plaintiff entitled him to damages, irrespective of the good faith of the conductor and for this reason it was not error to deny defendant's refused instruction. The judgment is affirmed. All concur.