CARMODY, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, January 22, 1907.

1. FALSE ARREST: Agency: Street Railway Companies. In an action against a street railway company wherein the plaintiff alleged that the defendant's servants and agents unlawfully, falsely and maliciously caused the plaintiff to be arrested, where the evidence showed that a road officer of the defendant who was a superior officer to the car conductor, caused the arrest, this was a sufficient showing that the arrest was made by the authority of the company.

2. CARRIERS OF PASSENGERS: Ejection of Passenger: Instruction Assuming Fact. In an action by a passenger against a street railway company for unlawful ejection from defendant's car, an instruction for plaintiff which authorized the jury to assess damages, etc., "if the alleged acts *subjected* the plaintiff to pain," etc., is not erroneous as assuming the fact that plaintiff did suffer pain.

3. ———: ———: Assault: False Arrest: Separate Causes of Action. In an action by a passenger against a street railway company for assault and unlawful ejection from the car and false arrest, where the evidence showed that plaintiff was forcibly removed from his seat and out of the car and the plaintiff's evidence tended to show that the motorman raised his controller handle in a threatening manner, this was an actual assault, coupled with a threat to do great bodily harm, and ejection from car; it constituted one cause of action. Plaintiff's arrest following this transaction, at the instance of the defendant, was another and different cause of action.

4. **EXEMPLARY DAMAGES: Discretion of Jury.** Punitive damages are not allowed as a matter of legal right in any case, but their allowance is left to the discretion of the jury; it is therefore error to instruct a jury that it "*should*" allow punitive damages for an assault, on finding that the assault was willful and without legal justification.

5. **DAMAGES: Mental Anguish.** While the general rule is that pain of mind does not constitute an element of damage, unless connected with a bodily injury, yet in an action by a passenger on a street car for unlawful ejection, where the evidence tended to show that he was assaulted and forcibly removed from the car and the assault accompanied by circumstances of malice, oppression and threats of great bodily harm, this was sufficient to submit to the jury the element of mental pain and anguish in estimating his damages.

6. **CARRIERS OF PASSENGERS: Duty of Carrier: Tender of Fare.** Where a street car passenger tendered to the conductor a transfer check, unmutilated, it was the duty of the street railway company's servants to exercise a high degree of care to carry such passenger to his destination. .

7. **FALSE ARREST: Agency: Authority of Agent.** In an action by a passenger against a street railway company for false arrest caused by the defendant's servants, an instruction which authorized a recovery for plaintiff upon the finding that such arrest was caused by an agent of the defendant who expressly "*or impliedly*" was acting within the scope of his authority when he caused the arrest, was proper.

8. **CARRIERS OF PASSENGERS: Ejection of Passenger: Right to Resist.** Where the agents of a street railway company in charge of a car attempted to eject a passenger who had paid his fare and was lawfully upon the car, such passenger had a right to resist and protest, and may recover for the pain and humiliation caused by forcible ejection.

Appealed from St. Louis City Circuit Court. — *Hon. Walter B. Douglas*, Judge.

AFFIRMED, *si.*

*Boyle, Priest & Lehmann* and *George W. Easley* for appellant.

(1) The demurrer to the evidence as to the cause of action, stated in the second count of the petition, should have been sustained. There was no evidence that

Calhoun, the road officer, had any authority from the defendant to cause the arrest. The record is silent as to what the duties of the road officer were. His duties are not fixed by law, and it was a matter of proof; and in the absence of proof that the authority had been conferred upon Calhoun to cause arrest to be made, the plaintiff is not entitled to recover upon the second count. Farber v. Railroad, 32 Mo. App. 381; Farber v. Railroad, 116 Mo. 81; Farber v. Railroad, 139 Mo. 272; Walker v. Railroad, 121 Mo. 575; McPeak v. Railroad, 128 Mo. 643. The fact that the act causing the injury was in the scope of the duties of the defendant's agent must be both alleged and proven. The failure of either is fatal to a recovery. Raming v. Railway, 157 Mo. 509; Krueger v. Railroad, 84 Mo. App. 366; Railroad v. Anderson (Tex.), 17 S. W. 1039. (2) The court erred in submitting to the jury the question of whether the plaintiff was threatened or abused or put in peril of his life and of great bodily harm, and especially in submitting, as a ground for recovery for the plaintiff on the first count, that the defendant's agents "did compel the plaintiff to leave such car as such passenger." The rhetoric of the first count of the petition should never have been carried forward into this instruction. The plaintiff was not threatened, menaced or abused. 1 Enc. P. & P., p. 148, VI, and Missouri cases cited in note 1; 1 Enc. P. & P., p. 159, par. V; Steiglider v. Railway, 38 Mo. App. 515. (3) This instruction is erroneous in that it directed the jury to find punitive damages if the acts charged against defendant's agents were done "willfully and without legal justification or excuse or provocation." This did not submit to the jury that they were required to find malice, wantonness or disregard of the rights of others. Voorhies on Meas. of Dam., p. 363, sec. 193; Wood's Mayne on Dam., p. 59; Kennedy v. Railroad, 36 Mo. 351; Carson v. Smith, 133 Mo. 617; 1 Suth. on Dam., pp. 723, 724. (4) This instruction is further

erroneous in that it told the jury that they should give
punitive damages, and thus took away from the jury the
discretion given them by the law to determine whether
such damages should be awarded or not.    The court de-
cided that they should.    That was a question for the
decision of the jury, and not the court.    Voorhies on
Meas. of Dam., sec. 186; Callahan v. Ingram, 122 Mo.,
355; Nicholson v. Rogers, 129 Mo., 136.    (5) The courts
universally hold that, under such circumstances, he
must pay his fare or quit the car.    Railroad v. Griffin,
68 Ill. 504; Pullman Co. v. Reed, 75 Ill. 125; Poulin v.
Railway, 52 Fed. 197; Railway v. Bennett, 50 Fed. 496;
Bradshaw v. Railroad, 135 Mass. 407; Townsend
v. Railroad, 56 N. Y. 295; Downs v. Railroad, 36 Conn.
287; McClure v. Railroad, 34 Md. 532; Petrie v. Rail-
road, 42 N. J. L. 449; Shelton v. Railway, 29 Ohio St.
214; McKay v. Railroad, 34 W. Va. 65; Hufford v. Rail-
way, 53 Mich. 118; Van Dusan v. Railway, 97 Mich. 439;
Yorton v. Railway, 54 Wis. 234; Woods v. Railway, 48
Mo. App. 125; Percy v. Railway, 58 Mo. App. 75; Rail-
way v. Gants, 38 Kan. 618; Peabody v. Railway, 21 Ore.
121.

*A. R. Taylor* for respondent.

STATEMENT.—After alleging that defendant is a cor-
poration operating street cars, in the city of St. Louis,
the petition states:

That on the eighteenth day of May, 1901, at Broad-
way and Olive streets, the plaintiff was received as a pas-
senger upon defendant's car, by defendant's servants in
charge thereof, and, for a valuable consideration paid
by plaintiff to the defendant, defendant undertook and
agreed with the plaintiff to carry him safely to his des-
tination on defendant's line, to-wit: at or near Ninth
and Pestalozzi streets, in the city of St. Louis, as such
passenger, yet the plaintiff avers that defendant, un-
mindful of its said undertaking and of its duty in the

premises, did, whilst the plaintiff was such passenger on said car, and before he reached his said point of destination, to-wit: at or near the intersection of Soulard and defendant's line of railway, by its servants in charge of defendant's said car and whilst acting within the scope of their employment, unlawfully assault, threaten, menace and abuse the plaintiff, and put him in peril of his life and of great bodily harm, and compel him to leave said car as such passenger, and subject him to pain, humiliation and disgrace in the presence of a large number of persons, to his actual damage in the sum of five thousand dollars. And plaintiff avers that said action by defendant and its servants, so in charge of its car, acted willfully and maliciously in said acts—wherefore, plaintiff prays judgment for five thousand dollars actual damages and for ten thousand dollars for punitive damages—in the total sum of fifteen thousand dollars.

"And for another cause of action the plaintiff avers that, defendant being such corporation using such car as aforesaid, and whilst the plaintiff was a passenger on said car as aforesaid, at or near Seventh and Soulard streets, on the eighteenth day of May, 1901, did by its servants and agents, whilst acting within the scope of their employment, and whilst undertaking to serve the defendant, unlawfully, wickedly, falsely, and maliciously, and intending to oppress the plaintiff and to deprive him of his liberty and to bring shame and disgrace upon him, cause him to be arrested by a police officer of the city of St. Louis, without warrant of law, and to be carried by such officer, under arrest and imprisonment, through the streets of the city of St. Louis, to a police station, whence he was discharged.

"That said arrest and imprisonment was false and malicious and was without warrant of law.

"That by said arrest and false imprisonment, the plaintiff was caused to suffer great inconvenience, pain and anguish of mind, and was humiliated and disgraced

among his friends, acquaintances and the people of St. Louis and State of Missouri, was injured in his good name and fame, to his actual damage in the sum of five thousand dollars. And plaintiff avers that said wrongful arrest and imprisonment was willful, malicious and without warrant of law and intended to oppress the plaintiff and deprive him of his liberty and right as a citizen of Missouri, wherefore he prays for ten thousand dollars by way of punitive damages against the defendant.

"Plaintiff prays for a total damage on the second count of his petition of fifteen thousand dollars."

The answer was a general denial.

Nine of the jurors signed and returned the following verdict:

"We, the jury in the above entitled cause, find for the plaintiff on the first count (which charges assault and expulsion from car), and assess his actual damages at the sum of five hundred dollars; and we find his exemplary or punitive damages on such count at the sum of one dollar.

"And we further find in favor of the plaintiff on the second count (which charges unlawful arrest), and assess his actual damages at the sum of five hundred dollars, and his exemplary or punitive damages on such count at the sum of one dollar."

Its motion for new trial proving of no avail, defendant appealed.

Plaintiff's evidence is that he took passage on an Olive street car, paid five cents fare and received from the conductor a transfer to the Broadway line; that he left the Olive street car at Broadway, boarded a car traveling south on the latter street, and handed, or offered to hand, his transfer ticket to the conductor, which, in passing from his hands to the conductor's fell on the floor. The conductor picked up the transfer and said to plaintiff, "Your ticket is torn in two. You will have to

pay a nickel," and told him a mutilated ticket would not be accepted by the company.  Plaintiff refused to pay the five cents fare, and the conductor told him he would have to pay or get off the car.  Plaintiff refused to do either, and the car proceeded south to Park avenue, where it was boarded by Andrew Calhoun, a road master of defendant, whom the conductor called in and informed that plaintiff had presented a mutilated ticket and refused to pay his fare or get off the car.  Calhoun instructed the conductor to collect the fare or put plaintiff off, and followed him to where plaintiff was seated in the front end of the car.  Plaintiff was again requested to pay but refused, and the conductor called in the motorman to assist him in ejecting plaintiff from the car. The motorman left the handle of the controller on the front platform.  Calhoun stepped back and got it and came back into the car, and, according to plaintiff's evidence, raised the handle in a threatening manner over plaintiff's head.  Plaintiff said to Calhoun, "If you strike me, I'll kill you."  Plaintiff was not struck but was taken hold of by the conductor and with slight resistance was removed to the rear platform.  About this time Soulard street was reached, where the car was stopped, and Calhoun halted a car going north and the motorman came over, also Kuntz, a police officer.  Calhoun asked Kuntz to put plaintiff off the car.  Kuntz replied he would not do so unless charges were preferred. Calhoun said he would prefer charges of disturbing the peace against plaintiff, whereupon the officer arrested plaintiff and took him to a police station, Calhoun going along.  Captain Young, of the police force, was in charge of the station and on Calhoun's refusal to prefer any charge against plaintiff, he discharged him and he went his way.

On the part of the defendant, the evidence tends to show that the railway company had a rule prohibiting its conductors from receiving mutilated transfer tick-

ets; that plaintiff's ticket was mutilated (torn in two) when he handed, or offered to hand it to the conductor; that the conductor informed plaintiff of the rule and requested him to pay a fare, whereupon he became so noisy and demonstrative as to intimidate the conductor. The rule of the company also requires the motorman, when he leaves his place, to take the controller handle with him. The evidence also shows that when the motorman was called into the car to assist in ejecting plaintiff, he forgot to take the handle, and Calhoun stepped back and got it but did not raise it over plaintiff's head; that no violence whatever was offered or used upon plaintiff by any one; that the conductor took hold of him gently and he and the motorman got plaintiff on the back platfrom without much resistance. Defendant's evidence further tends to show that plaintiff disturbed the peace of other passengers by using violent, obscene and profane language in their presence and hearing. Calhoun denied that he told the officer he would prefer charges, if he would make the arrest, and testified he was very careful not to make any such promise; that when the officer asked him if he would make a charge, some one, not he, said "Yes." Defendant's evidence also tends to show that plaintiff had a revolver in his hip pocket, was intoxicated and made a move to draw the revolver. In rebuttal plaintiff's evidence tends to show he was not intoxicated, that he had no revolver, and that he did not use vile or profane language; that the only threat he made was when Calhoun had the controller handle drawn over his head.

Plaintiff, in an interview given to a newspaper (the Post-Dispatch) the next morning, gave a bombastic account of the affair, in which he boasted of his prowess and bravery. This interview was read in evidence by defendant.

BLAND, P. J. (after stating the facts).—1. Defendant offered an instruction in the nature of a demur-

rer to plaintiff's evidence. The refusal of the court to grant this instruction as to the cause of action stated in the second count of the petition is assigned as error. By reference to the second count it will be seen the cause of action therein stated is, in substance, that defendant's servants and agents unlawfully, falsely and maliciously caused plaintiff to be arrested by a police officer. Plaintiff's evidence tends to show the arrest was made on the request of Calhoun, and the evidence is that Calhoun was a road officer of the eastern division of defendant's system of roads. What his duties were as such road officer is not shown by any direct evidence in the case; however, Rodgers, the conductor of the car, testified that Calhoun was his superior officer and had the right to take charge of his car at any point on the road; and it is shown by plaintiff's evidence that Calhoun not only directed the ejection of plaintiff, but also requested his arrest. Calhoun, according to the evidence of Rogers, was his superior officer in the management of the car and acted, on the occasion, as the conductor's superior, in regard to having plaintiff put off the car and arrested.

In Dwyer v. St. Louis Transit Company, 108 Mo. App. 152, and Boden v. St. Louis Transit Company, Ib. 696, it was held that the conductor of a street car has the authority to order the arrest of a passenger on the car, who refuses to pay his fare, or for other statutory causes. It necessarily follows that Calhoun, as the superior of the conductor, had the same authority. We think, therefore, the court did not err in refusing to grant the instruction as to either count of the petition.

2. The second error assigned is the giving of the following instruction for plaintiff:

"2. If the jury find from the evidence in this case, that on the eighteenth day of May, 1901, the defendant was operating the railway and car mentioned in the evidence for the purpose of conveying passengers, for hire

as a street railway company; and if the jury further find from the evidence that on said day the defendant, by its servants in charge of its car bound south on Broadway, in the city of St. Louis, received the plaintiff as a passenger upon said car, to be carried as a passenger thereon to his destination on defendant's line, to-wit, at or near Pestalozzi street; and if the jury find from the evidence that the plaintiff had paid his fare, as such passenger, and had a transfer ticket entitling him to ride as a passenger upon defendant's said car to his said point of destination; and if the jury further find from the evidence that whilst the plaintiff was such passenger on said car, and before he reached his said destination as such passenger, defendant's servants in charge of said car, whilst acting as such, and whilst in the line of their employment as such, assaulted the plaintiff and did threaten, menace and abuse the plaintiff, and did threaten and put the plaintiff in peril of his life and of great bodily harm, and did compel the plaintiff to leave said car as such passenger; and if the jury find from the evidence that said acts by defendant's servants subjected the plaintiff to pain, humiliation and disgrace; then the plaintiff is entitled to recover therefor such damages as the jury may believe from the evidence will compensate the plaintiff for such pain, humiliation and disgrace so suffered. And if the jury find from the evidence that such acts were done by defendant's said servants, willfully and without legal justification or excuse or provocation, then the jury should further assess damages against the defendant in such sum as the jury may believe from the evidence will be a suitable punishment to defendant for such wrongful acts. And such damages should be separately stated in the verdict."

Defendant contends the instruction is erroneous in that it "directs the jury that if the alleged acts *subjected,* that is, exposed or laid the plaintiff liable to

pain, then the jury must give such damages as will compensate the plaintiff for such pain, etc., so suffered. This assumes that the plaintiff did suffer pain, etc., if the acts of the defendant subjected, that is, exposed or laid him liable thereto. . It did not submit to the jury the question to be passed upon as a matter of fact or whether the plaintiff did suffer any pain, etc., or not." The instruction is not open to this criticism. By the sixth clause thereof the jury were directed to assess "such damages as the jury may believe from the evidence will compensate the plaintiff for such pain," etc. The use of the words, "subjected the plaintiff to pain," etc., is criticised as assuming that plaintiff suffered pain, etc. As used in the instruction the term means, to undergo, and could not, in the connection in which it is used, have been understood by the jury in any other sense. It is also claimed the instruction is erroneous, in that plaintiff was not threatened, not put in peril of life or limb, and was not ejected from the car. The uncontradicted evidence is that plaintiff was forcibly removed from a seat near the front end of the car and out of the body of the car on to the back platform, by defendant's agents and employees; and plaintiff's evidence tends to show Calhoun raised the controller handle over his head in a threatening manner, hence there was more than a mere technical assault. There was an actual assault, coupled with a threat to do plaintiff great bodily harm, and an actual ejection from the body or inside of the car. This transaction constituted one cause of action. Plaintiff's arrest followed this transaction and constituted another and different cause of action and, if made maliciously and without probable cause, was in itself a tort, wholly independent of the assault and ejection from the car, and furnished plaintiff another and separate cause of action, and there is no merit in the contention that the evidence shows but one cause of action. It is also contended that the instruction is erroneous in

directing the jury to award punitive damages if they found the assault and ejection willful, "without legal justification or excuse or provocation." It is not every wrong that authorizes the awarding of punitive damages. Such damages are only authorized where the tort complained of is characterized by express malice, violence, oppression or wanton recklessness. [Kennedy v. Railroad, 36 Mo. 350; Buckley v. Knapp, 48 Mo. 152; Carson v. Smith, 133 Mo. l. c. 617, 34 S. W. 855, and cases cited.] Such damages are not allowed solely as so much additional compensation, but are allowed, principally, as punishment of the wrongdoer and to deter others from committing like torts. [2 Sutherland on Damages (3 Ed.), sec. 401.] They are, therefore, not allowed as a matter of legal right and their allowance should always be left to the discretion of the jury. [Nicholson v. Rogers, 129 Mo. 136; Carson v. Smith, supra; Sutherland on Damages (3 Ed.), sec. 403.] Therefore, it was error to instruct the jury they *"should"* find exemplary damages. It is also contended that the instruction is erroneous in that it admits damages for pain, humiliation and disgrace without the same being connected in any manner with a physical injury.

In Spohn v. Railway, 116 Mo. 617, 22 S. W. 690, the plaintiff was frightened by defendant's servants in charge of the train and other persons thereon, and jumped from the train while it was in motion. An instruction was given by the court, entitling plaintiff to recover damages of defendant for threats whether any injury, fear or fright resulted therefrom to his person or property. At page 633, Judge GANTT pronounced the instruction erroneous and said: "We do not think any case in this court can be found which will sustain the doctrine announced in this instruction." The Spohn case was followed by us in Grayson v. St. Louis Transit Co., 100 Mo. App. 60.

In Trigg v. Railway, 74 Mo. l. c. 153, the court

said: "The general rule is that 'pain of mind, when connected with bodily injury, is the subject of damages; but it must be so connected in order to be included in the estimate, unless the injury is accompanied by circumstances of malice, insult or inhumanity.'"

In Sommerfield v. Transit Co., 108 Mo. App. l. c. 724, 84 S. W. 172, we said: "The law is firmly established that where the commission of a tort is attended with circumstances denoting malice, or oppression; or where the defendant acts willfully and with wanton disregard of the rights of others, exemplary or punitive damages may be allowed, as well for the punishment of the wrong inflicted as to deter repeated perpetration of similar acts. [2 Sutherland, Damages (3 Ed.), sec. 391.]"

Plaintiff's evidence tends to show the assault upon him was accompanied by circumstances of malice and oppression, and that his life or great bodily harm was threatened. Under this evidence, we think it was proper to have the element of pain and mental anguish submitted to the jury in estimating plaintiff's damages.

3. What is said of the first instruction applies to plaintiff's second instruction, based on the second count of the petition.

4. The fourth instruction for plaintiff, the giving of which is assigned as error, is as follows:

"The court instructs the jury that if they find from the evidence in this case that the defendant's servants in charge of its south-bound car received the plaintiff as a passenger thereon, at Broadway and Olive streets, in the city of St. Louis; and, if the jury further find from the evidence that the plaintiff had paid his fare entitling him to ride as a passenger on said car to his destination on defendant's line of railway; and, if the jury find from the evidence that the plaintiff obtained from defendant's conductor in charge of its car on Olive street, at the time he paid such fare, a transfer ticket, entitling

him to ride as such passenger on said Broadway car to his destination; and, if the jury further find from the evidence that the plaintiff tendered to the conductor of said Broadway car such ticket unmutilated, in payment of his fare as such passenger on said car; then the defendant and its servants in charge of said car were bound in law to safely carry the plaintiff as such passenger upon said car, to his said point of destination, if they could do so by the exercise of the high degree of care of careful railroad employees under the same or like circumstances."

Under the evidence, we think this was a proper instruction. It defines the right of plaintiff and the duty of defendant's agents and servants, in the circumstances shown by the evidence, and informed the jury, in effect, that if plaintiff offered his transfer ticket to the conductor, putting him off the car was unwarranted and a violation of his rights.

5. Defendant offered the following instruction which the court amended by inserting after the word "expressly," the words "or impliedly," and gave the instruction as modified.

"7. The jury are instructed that they are not authorized to infer from the fact that defendant's agents were authorized by defendant to expel the plaintiff from the car for non-payment of fare, and that they did expel him; that such agent or agents were authorized by defendant to cause plaintiff's arrest; but before the plaintiff can recover for the arrest alleged he must show by a preponderance of the evidence that the defendant had either expressly authorized and empowered such agent or agents to cause plaintiff's arrest, and that they, or some of them, were acting within the scope of that authority and power, and in pursuance thereof caused plaintiff to be arrested, and if the plaintiff has failed to so prove such authority, or such action in pursuance of

it, then your verdict must be for defendant on the ground of the arrest."

Under the authority of Dwyer v. St. Louis Transit Co., and Boden v. St. Louis Transit Co., supra, the modification of the instruction did no harm.

6.    Defendant asked the following instruction, which the court refused to give:

"14.   Even if the jury do find from the evidence, under the instructions of the court, that the plaintiff offered a proper transfer, and that the conductor had no legal right to refuse the same, those facts would only authorize the plaintiff to pay the fare or quit the car and sue for and recover fair compensation (including another fare, had he paid the same, and it was wrongfully demanded) for such wrong, and if you believe from the evidence by such course the plaintiff could have avoided his alleged shame and mortification of a public expulsion, but chose, rather than to take that course, to resist the demands of the conductor to the extent of requiring the use or show of force for his removal from the car, then he subjected himself to whatever mortification he suffered from being publicly removed from the car, and that is not a matter to be considered by you in estimating his damages for such expulsion."

In Woods v. Railway, 48 Mo. App. 125, the Kansas City Court of Appeals approvingly quoted the following from Frederick v. Railroad, 37 Mich. 342: "The public is interested in having the rules whereby conductors are to govern their actions certain and definite, so that they may be enforced without confusion and without stoppage of trains; and if the enforcement causes temporary inconvenience to a passenger, who by accident or mistake is without proper evidence of his right to passage, though he has paid for it, it is better that he submit to the temporary inconvenience than that the business of the road be interrupted, to the general annoyance of all who are on the train. The conductor's

duty, when the passenger is without the evidence of having paid his fare, is plain and imperative, and it can serve no good purpose and settle no rights to have a controversy with him." The same doctrine is held in Pennsylvania R. R. Co. v. Connell, 112 Ill. 295, and in other cases that might be cited.

In Erie Railroad Co. v. Winter, 143 U. S. 60, the facts are as follows: "Plaintiff bought a ticket in Boston entitling him to a passage over defendant's road. At the time he informel the ticket agent of his wish to stop off at Olean station, and was then told by the agent that he would have to speak to the conductor about that. Between Binghamton and Olean the plaintiff informed the conductor that he wished to stop over at Olean and the conductor, instead of giving him a stop-over ticket, punched his ticket and told him that was sufficient to give him the right to stop over at Olean, and afterwards to use the punched ticket between Olean and Salamanca. He made the stop, and taking another train to Salamanca, presented the punched ticket, informing the conductor of what had taken place. The conductor refused to take it and demanded full fare. The payment of this being refused, the conductor stopped the train at the next station and ejected him from it, using such force as was necessary." The court held:

"1.  That he was rightfully on the train at the time of his expulsion;

"2.  That the conductor had no right to put him off for not paying his fare;

"3.  That the company was liable for the act of the conductor;

"4.  That the passenger had a right to refuse to be ejected from the train, and to make a sufficient resistance to be being put off to denote that he was being removed against his will by compulsion;

"5.  That the fact that under such circumstances

122 App—23

he was put off the train was, of itself, a good cause of action against the company, irrespective of any physical injury he might have then received, or which was caused thereby."

In English v. Delaware and Hudson Canal Co., 66 N. Y. 454, it was held: "A passenger who is lawfully upon a railroad train and has paid his fare has the right to offer such resistance to any attempt on the part of the conductor to remove him therefrom as may be necessary to prevent his being ejected; and if, in consequence of his resistance, extraordinary force becomes necessary and is used to remove him, and he is injured thereby, he can recover of the corporation for such injury."

In Breen v. St. Louis Transit Company, 102 Mo. App. 479, 77 S. W. 78, we held that plaintiff, who was rightfully on board defendant's car, and who had tendered and continued to tender his fare in lawful money; but which the conductor would not receive because he believed it was counterfeit, "had a right to protest and reasonably resist ejection, and forfeited none of his rights to recover damages thereby." It is only where the passenger has no ticket and refuses to pay fare that the conductor is authorized to eject him, and the burden is on the railroad company to show that one ejected from a train or car was put off for failure to pay fare, or for some other statutory ground. [Holt v. Railway, 174 Mo. 524, 74 S. W. 631.]

7. Defendant's twelfth refused instruction is as follows:

"If the jury, after a full and fair consideration of all the facts and circumstances in evidence before them, believe that the plaintiff refused to pay the fare demanded by the conductor, for the purpose of being put off the car or arrested, to the end that he might make such expulsion or arrest the basis of a suit for damages, then the plaintiff cannot recover on either count of his

petition anything more than actual compensatory damages for his loss of time, expenditures and the like, and cannot recover anything for humiliation, shame or mortification or for punitive or exemplary damages."

Outside of Calhoun's suspicion, there is no evidence whatever in the record to support this instruction. For error in giving instructions in respect to exemplary damages the judgment will be reversed and the cause remanded, unless within ten days from the filing of this opinion, plaintiff remit the sum of two dollars of his judgment; if the remittitur be entered in the time herein allowed the judgment will be affirmed for one thousand dollars. All concur.