SONNEN, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, November 3, 1903.

1. **Damages:** ASSAULT ON PASSENGER: INSTRUCTIONS. In an action for assault by a conductor, an instruction which comprehends fully all the facts which plaintiff relied on, and which entitles him to a verdict and is supported by the evidence offered by him, is not erroneous because it ignores defendant's right of self-defense, which is fully explained in other instructions.

2. ———: ———: ELEMENT OF DAMAGES. If a feeling of humiliation and disgrace caused by an assault is fairly inferable from the evidence, it is an element of actual damages to be submitted to the jury. .

3. **Appellate Practice:** STATUTORY DAMAGES. It not appearing that the appeal was taken solely for vexation and delay, though without merit, the statutory ten per cent damages will not be allowed against appellant.

Appeal from St. Louis City Circuit Court.—*Hon. J. A. McDonald,* Judge.

AFFIRMED.

*Boyle, Priest & Lehmann* and *Crawley, Jamison & Collet* for appellant.

The giving of plaintiff's first instruction was reversible error. Thompson on Trials, sec. 1031; Jordan v. City of Hannibal, 87 Mo. 673; Wood v. Campbell,

110 Mo. 572; Carroll v. Campbell, 110 Mo. 557; Kendall Boot & Shoe Co. v. Bane, 46 Mo. App. 581; Lessor v. Railroad, 85 Mo. App. 326.

*Paxon & Clark* for respondent.

BLAND, P. J.—For plaintiff the evidence tends to show that on October 29, 1902, he was a passenger on one of defendant's street cars traveling west on Easton avenue, in the city of St. Louis; that the inside of the car, and also the rear platform, were crowded with passengers; that when plaintiff boarded the car he took a position on the rear platform between the door of the car and the open side of the platform with his back against the car, so that passengers getting on or off the car would be forced to pass around him; that when Eighteenth or Nineteenth street was reached, the car stopped to let off a lady passenger and the conductor asked the plaintiff to move to let the passenger off; that he drew himself up closer to the body of the car to make room for the passenger to pass between him and the other passengers on the platform to reach the step; that the conductor then slapped him on the shoulder with considerable force and plaintiff threw up his hands and said, ''Please don't do that,'' whereupon the conductor struck him a severe blow on the side of the head, knocking him into the street; that the plaintiff was then told by some of the passengers to come aboard the car that he had a right to ride; that he did so and when the car reached the car stables of the defendant company, the plaintiff and other passengers went in and reported the difficulty to the officers of the company.

The conductor was not discharged.

Plaintiff testified that the blow injured his hearing; that he was dizzy; that he suffered severe pain in his head and was treated by a physician but since his discharge by the physician he frequently had the earache

and headache; that he had never had earache prior to the assault.

The physician who attended him testified: "My diagnosis was, an affection of the inner ear, in all probability, taking the history of the case into account, in all probability a small hemorrhage into the ear is my diagnosis. I treated Mr. Sonnen in the usual manner, and by and by all the symptoms disappeared. I dismissed him the middle of December, and at that time the hearing had returned to the normal." That a blow such as plaintiff said he had received could cause ringing in the ears and more or less pain.

He further testified that, "The immediate consequences are more or less pain, which pain need not be a severe one, necessarily, but one of the symptoms is dizziness, a feeling of dizziness more or less severe. If the dizziness is very severe, the patients stagger, and they are inclined to vomit. The three subjective symptoms are dizziness, ringing in the ears, and more or less impairment of the hearing. I have examined him again, about three days ago, and found the hearing normal in that ear, and in my opinion there will be no after-effects."

On the part of the defendant, the evidence tends to show that the conductor had politely requested plaintiff to move so that passengers could get on and off the car, on several occasions before the car arrived at Nineteenth street; that there was room in the car or elsewhere on the platform for him to stand, if he had chosen to do so, but that he persisted in remaining where he was and when the car stopped at Nineteenth street to let off a lady passenger, the conductor again politely requested him to move and when he did not do so he put his hand gently on his shoulder to push him to one side, when the plaintiff struck at the conductor; that the conductor then struck the plaintiff a pretty good blow on the side of the head and knocked him into the street.

The verdict and judgment were for the plaintiff for compensatory damages only.

1.   Plaintiff's first instruction reads as follows:

"The court instructs the jury that if you believe from the evidence that on or about the twenty-ninth day of October, 1902, the plaintiff was a passenger on one of defendant's cars running on Franklin avenue, in this city, and that whilst plaintiff was on said car as a passenger, the conductor in charge of said car, and whilst in the discharge of his duties as such conductor, without cause, excuse or provocation therefor, did strike, assault beat or mistreat plaintiff, thereby knocking plaintiff down and ejecting him from said car, by reason of which plaintiff was hurled to the pavement on said street, and by reason of which plaintiff sustained injuries to his person, then your verdict should be for the plaintiff."

The answer alleged that the conductor was first assaulted by the plaintiff and for this and other reasons pleaded in the answer (not necessary to set out here) the conductor was justified in striking the plaintiff. For the reason that the right of the conductor to defend himself, etc., as alleged by the answer and shown by defendant's evidence, was not incorporated in the instruction or "were ignored," as counsel for the defense puts it, it is insisted the instruction is erroneous. Two opposing theories of the assault are presented by the pleadings and the evidence; the plaintiff's, that an unprovoked assault was made upon him, the defendant's, that the assault was justified. It was the duty of each party to the suit to take care of his own side of the case and to offer instructions covering his theory of the case as set out in his pleadings and sustained by his evidence. The instruction under review comprehends very fully all the facts which plaintiff relied on and which entitle him to the verdict, and is supported by the evidence offered by him, therefore it was appropriate.

At the instance of defendant the court properly gave the following counter instructions, to-wit:

"3.   If the jury find from the evidence that, while the conductor in charge of defendant's car was in the orderly discharge of his duties, plaintiff provoked or brought on a difficulty with said conductor, and by striking, or threatening to strike, said conductor, so aroused his passions that he assaulted and injured said plaintiff, then and in that event, the court declares to you that said conductor alone is responsible to plaintiff for whatever injuries he may have so inflicted upon plaintiff, and the plaintiff can not recover in this case.

"4.   The court instructs the jury that while plaintiff was on defendant's car, riding as a passenger thereon, it was his duty to deport himself orderly and obey all reasonable requests that might be made of him by the conductor in charge of said car, for the benefit or convenience of other passengers.   And if you believe from the evidence that the plaintiff took a position on the rear platform of said car in a place where his presence would, and did, interfere with other passengers in getting on or off said car, then it was his duty, when requested by the conductor so to do, to remove to some other part of said car where he could not obstruct the passage or interfere with passengers getting on or off the car, and if plaintiff refused, when so requested, to so change his position upon said car, then the conductor in charge of said car had a right to remove the plaintiff out of the passageway, and if, in so doing, he used no more force than was reasonably necessary to accomplish such purpose, and plaintiff, because of such effort on the part of the conductor to so remove him from such position on the platform, either struck or attempted to strike the conductor, then the conductor had a legal right to defend himself against such assault, in whatever manner and with whatever means were apparently necessary to prevent plaintiff from doing him, the conductor, bodily harm.   And if the jury find that the as-

sault complained of by plaintiff occurred under the circumstances and in the manner above set forth, then your verdict must be for the defendant.''

These, with the one given for the plaintiff, under all the evidence, fairly and correctly declared the law of the case to the jury and it is not to be presumed that the jury ignored those given for the defendant and considered only the one given for the plaintiff, in determining to which of the parties the verdict should be given, but that they did their duty and considered these instructions together.

2.   The following other instruction given for plaintiff is criticised:

''2.   The court instructs the jury that in assessing actual damages for the plaintiff, if you find for him you may take into consideration the physical injury inflicted, the humiliation and disgrace caused to plaintiff, if any, by the said acts of said conductor, and in addition thereto, if you find the assault on plaintiff by said conductor was malicious (and by the term 'malicious' is not meant spite or ill will, but the intentional doing of a wrongful act without just cause or excuse) you may allow such further damages, known in law as exemplary damages, as will be in your judgment a just punishment to defendant, and a wholesome warning to others; and if you so find you will state the amounts separately.''

No exemplary damages were awarded by the jury, hence it is unnecessary to discuss whether or not such damages could be rightfully assessed under the pleadings and the evidence.

Defendant insists that there was no evidence that the plaintiff felt any humiliation or disgrace on account of the assault.   He did not use these identical words in his testimony.   He was a German and had an indifferent command of the English language.   The evidence is that he was well educated in his own language,

was of a very sensitive nature and his testimony, we think, when properly apprehended shows that he felt both humiliation and disgrace, in fact, if the facts of the assault are as he testified they were, and he is the kind of man the evidence shows him to be, he could not have kept down a feeling of humiliation and disgrace, and that he did feel humiliation and disgrace is fairly inferable from the testimony, and we think that the language used by him on the witness stand clearly indicates that he did feel both humiliated and disgraced.

3. Plaintiff has filed a motion for ten per cent damages on the judgment which the statute allows the appellate court to assess where the appeal is without merit and was taken for vexation or delay. We think the appeal is without merit, but we are not willing to say that the appeal was taken solely for vexation or delay and therefore overrule the motion.

The judgment is affirmed. *Reyburn* and *Goode, JJ.*, concur.