# O'BRIEN v. ST. LOUIS TRANSIT COMPANY,
## Appellant.

### Division One, December 22, 1904.

1. **CARRIER: Duty To Passenger: Alighting With Safety: Assault: Master and Servant.** A passenger attempting to alight from a street car is still a passenger until he has accomplished the act of alighting in safety. And if the conductor engages in a quarrel with the passenger as he steps off of the car, and strikes him and follows him to the sidewalk and there kills him, the duty of the carrier does not end with the stepping of the man from the car but continues until the act of alighting is fully accomplished, and the conductor is not, when he reaches the sidewalk with the passenger, beyond the field in which his act as servant is chargeable to the master.

2. ———: ———: **Master and Servant: Assault.** A conductor is not employed to follow passengers to the sidewalk and beat and shoot them; yet they are employed to protect them from assualt while they are leaving the car and see that they alight in safety, and the master is liable for a neglect of that duty.

3. ———: ———: ———: **By Passenger.** If the passenger first assaults the conductor, and in a personal combat between them brought on by the passenger's assault he is killed or injured, the carrier is not liable.

4. ———: **Conductor: Preserving Peace.** The conductor of a street car is charged, for the protection of his passengers, with the duty of preserving the peace on the car, but that duty should not be merged with his right to resent an insult to himself, nor does it justify him in following a passenger to the sidewalk, nor relate to disorders entirely off the car, nor should an instruction on the point omit to state that to preserve the peace he is not permitted to use unnecessary force.

5. ———: ———: **First Assault.** The mere fact that the passenger first insulted and struck the conductor, did not alone justify the conductor in killing him on the car or in subsequently assaulting him on the street off of the car or following him to the sidewalk and killing him. If the passenger after striking the conductor pulled him off of the car and the fight there ensued which resulted in the passenger being killed, the carrier is not liable. But if after the passenger struck the conductor he tried to get off of the car and the conductor held him back or followed him to the sidewalk and there killed him the carrier is liable.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney*, Judge.

AFFIRMED.

*Boyle, Priest & Lehmann* and *George W. Easley* for appellant.

The conductor at the time of the shooting was not engaged in the performance of any duty for the defendant. The scuffle during which the pistol was discharged grew out of the personal quarrel between the plaintiff's husband and the conductor, in which the conductor was acting on his individual responsibility, and not within the scope of his agency for defendant, and the defendant is not liable therefor. Lynch v. Railroad, 10 Am. Neg. Rep. 257. Even had the conductor expelled the deceased from the car, yet if deceased was shot in a mutual combat ensuing from such expulsion, the railroad company is not liable for the consequence of such shooting. Peavy v. Railroad, 81 Ga. 485; Railroad v. Randolph, 65 Ill. App. 208. Even if the conductor pursued the deceased to the sidewalk and there shot him, the defendant would not be liable, because he was not engaged at that time in or about the business of the defendant. Gilliam v. Railroad, 70 Ala. 268. Where a person who has paid his fare on a street car to his destination, gets off when the car is switched into the car house before reaching his destination, and while standing in the street with one foot resting on the step of the car, engages in an altercation with the conductor over the fact that the car did not run through, and that he was not informed that it would be switched, and on that account is assaulted by the conductor, he can not recover from the company, the conductor's act not having been within the scope of his employment. McGilvray v. Railroad, 41 N. E. 116; Dolan v. Hubinger, 6 Am. Neg. Rep. 506. This is undoubtedly the rule in

Missouri. Parker v. Railroad, 32 Mo. App. 381; Parker
v. Railroad, 116 Mo. 81; McPeak v. Railroad, 128 Mo.
643; Raming v. Railroad, 157 Mo. 309; Kneeger v. Rail-
road, 84 Mo. App. 366; Railroad v. Anderson,
17 S. W. 1039. When the plaintiff's husband step-
ped upon the street the relation of carrier and pas-
senger ceased and the defendant owed him no further
duty as a carrier, and what the conductor thereafter
did was not on behalf of defendant. Railroad v. Boddy,
105 Tenn. 666, 58 S. W. 646.

*A. R. Taylor* for respondent.

(1)   The cause was presented to the jury on the
theory that if the assault by the conductor with the
clubbed pistol on deceased was begun on the car, and
continuously followed up by the conductor until the
shooting and killing deceased, it was one assault and
killing. If that is the law, then we think it is clear that
a number of the instructions given for the defendant
were erroneous. (2)   The appellant in this case, by
its contract of carriage, was bound to carry the de-
ceased to his point of destination on appellant's line,
there stop the car and allow him to alight from the car.
And it was a part of the duty of the carrier to even
protect the passenger from assault by other persons.
The conductor is the carrier in the discharge of this
duty. His acts are the carrier's acts in the discharge
of these duties. It is of no consequence what his au-
thority from the carrier may be. This duty owed by
the carrier must be performed. Hutchinson on Car-
riers, secs. 595, 596; Thompson, Neg., sec. 3185;
Schoulor on Bailments, sec. 644; Chamberlain v. Chand-
ler, 3 Mo. 245; Goddard v. Railroad, 57 Me. 202; Spohn
v. Railroad, 87 Mo. 74; McGinnis v. Railroad, 21 Mo.
App. 399. (3)   An inspection of the instruction 2 given
for defendant shows that it justifies homicide for being
called vile names and being struck a blow—which is not

the law.   To kill a man justifiably there must be a real
or apparent need therefor to defend one's self from
death or bodily injury.

VALLIANT, J.—Plaintiff is the widow of Michael
O'Brien who was killed by a conductor of one of de-
fendant's street cars, as the petition charges, ''whilst
in charge of its said car, as driver and controller, negli-
gently and with criminal intent.''   The suit is founded
on section 2864, Revised Statutes 1899.

The plaintiff's evidence tended to prove as fol-
lows:

Michael O'Brien, plaintiff's husband, was a pas-
senger on one of defendant's street cars; his destina-
tion was Twelfth and Hebert streets; on approaching
that crossing he signaled the conductor to stop there,
but the car passed Twelfth street and went on to
Thirteenth, and there stopped for him to alight.
O'Brien was provoked at being carried past his stop-
ping place and spoke angrily to the conductor about it
and a quarrel of words between them ensued.   During
the quarrel O'Brien was getting off the platform of
the car backwards, facing the conductor who was strik-
ing him, or striking at him, with the butt end of a
pistol he held in his hand.   When O'Brien stepped down
from the platform the conductor followed him to the
sidewalk holding to him and beating him with the
pistol.   Arriving on the sidewalk the two men clinched,
O'Brien got behind the conductor and threw his arms
around him holding his (the conductor's) arms down
by his side, and in the struggle the conductor pointed
his pistol around and fired, inflicting a wound from
which O'Brien died two days later.

The testimony on the part of defendant tended to
prove as follows:

When O'Brien asked the conductor to stop at
Twelfth street the conductor said he would give the
signal, but that he did not think the motorman would

·or could stop there because of the condition of the street; he gave the signal, but the car did not stop until it got to Thirteenth street. O'Brien became angry at being carried past Twelfth street and used abusive language to the conductor, and passing the conductor on the rear platform struck him a blow on the side of the head, then grabbed him by the lapel of his coat and ·dragged him off the car and struck at him twice but missed him; the conductor reached into his pocket and got his pistol; when he drew it out he had a handkerchief fastened around it and he struck at O'Brien two or three times, holding it by the barrel. Some one at that time came up behind the conductor and he turned around and as he did so O'Brien seized him from behind and pinned his arms down to his side, and in that way they scuffled and fell and in the fall the pistol was discharged.

Under the conflicting evidence as shown in the above statement, the jury, if properly instructed, would have been justified in returning a verdict for the plaintiff if they believed her witnesses in preference to those of the defendant, and they would have been justified in finding for the defendant if they believed its witnesses in preference to those of the plaintiff. The verdict was for the defendant, but the court sustained the plaintiff's motion for a new trial on the ground that it had erred in the instructions given at the request of the defendant. The questions on this appeal relate entirely to the instructions so given.

Appellant takes the position that as this killing occurred on the sidewalk, the conductor was beyond the field in which his act as servant was chargeable to the master, and for that reason the plaintiff on her own evidence was not entitled to go to the jury.

We have now to look, not only to the law of master and servant, but also to that of carrier and passenger. It is the duty of the carrier not only to exercise care to carry the passenger safely to his destination, but

also to afford him opportunity to alight in safety. In 3 Thompson on Neg., sec. 3518, it is said: "At the outset it is to be remembered that the person attempting to alight from the carrier's vehicle is *still a passenger* until he has accomplished the act of alighting in safety; and that the street car company is a *carrier of passengers,* and owes to the passenger attempting to alight that *very high degree of care* and attention which the law puts upon it generally, to the end of promoting the safety of its passengers. The degree of care required under these circumstances has been described as the greatest care consistent with the practical operation of its cars." While the passenger is in the carrier's vehicle he is entitled to protection from assault even from strangers, if by the exercise of the degree of care devolving on the carrier it can be afforded, and *a fortiori* the carrier owes it to his passenger not to maltreat him by the hands of its own servants. [Hutchinson on Carriers, secs. 595-6.] Quoting again from 3 Thompson on Negligence, secs. 3185, 3186, the author says that the law implies not only an agreement to carry safely, "but also an agreement for kind, considerate, respectful and decorous treatment to the passenger at the hands of the carrier's own servants. . . . The carrier is liable absolutely, *as an insurer,* for the protection of the passenger against assaults and insults at the hands of his own servants, because he contracts to carry the passenger safely and to give him decent treatment *en route.*"

If it be conceded, therefore, that under the law of master and servant the conductor was outside of the field of his employment when he followed (if he did so) this man to the sidewalk and assaulted him, still under the law of carrier and passenger the man was under the care and entitled to the protection of the carrier not only while he was in the car but while he was alighting and until the act of alighting had been entirely accomplished. Whilst it is true a conductor

is not employed to follow passengers out to the sidewalk and beat or shoot them, yet they are employed to protect them from assault while they are leaving the car and to see that they alight in safety. If a stranger on the car had done to this man what the evidence for plaintiff tends to show the conductor did, and if the conductor could have prevented the wrong by the exercise of a very high degree of care and failed to do so, the defendant would have been liable; with what stronger reason, therefore, is the defendant liable when the conductor himself is the offender.

But whilst care on the part of the carrier for the safety and kind treatment of the passenger are required, yet so also are required care on the part of the passenger for his own safety and decent behavior. If the passenger assaults the conductor, the latter has a right to defend himself, and if in a personal combat between the passenger and the conductor, brought on by the passenger's wrongful assault, the latter is injured, the carrier is not liable. If, as the defendant's evidence tended to prove, O'Brien struck the conductor and then seized him and dragged him off the car to the sidewalk, it was then an affair between man and man and the defendant was not liable for what happened on the sidewalk.

It was a fair case under the evidence for the jury if the instructions had been right.

The following are the only instructions criticized:

"2. The court instructs the jury that if they believe from the evidence that plaintiff's husband, just before alighting from said car at Thirteenth and Hebert, called the conductor thereof vile names and struck said conductor, and that said conductor, in resenting said insult and repelling said assault, then struck plaintiff's husband, and that he dragged said conductor from said car and that a fight then ensued on the ground, off of said car, between him and said conductor, in which said plaintiff's husband was shot, and that as a result of

said shooting he died, then said plaintiff is not entitled to recover and your verdict must be for the defendant.

"3.   The court instructs the jury that if they believe from the evidence that plaintiff's husband cursed the conductor on said car and called him vile names while in the act of alighting from said car, and that at that time said conductor had neither struck plaintiff's said husband nor cursed him, such conduct on the part of said plaintiff's husband was disorderly and constituted a breach of the peace; and if they further believe from said evidence that said conductor in resenting said insult engaged in a fight with said plaintiff's husband on the street off of said car, but not upon said car, in the course of which said plaintiff's husband was shot, and that he died from said injuries, then said plaintiff is not entitled to recover, and your verdict must be for the defendant.

"4.   If you find from the evidence in this case that plaintiff's husband struck the defendant's conductor before said conductor had made any assault whatever upon him, and if you further believe from the evidence that said plaintiff's husband and said conductor then engaged in a fight on the street off said car, in the course of which said plaintiff's husband was shot, and although you find that said plaintiff's husband died as a result of said injury, the plaintiff is not entitled to recover and your verdict must be for the defendant.

"5.   The court instructs the jury that if from the evidence they believe that plaintiff's husband assaulted the conductor of said car as he was alighting therefrom, said conductor was justified in defending himself, and should they further believe from the evidence that said conductor did defend himself from said assault, should they find there was one, and that, while so defending himself, there was a fight on the street off of said car between plaintiff's husband and said conductor, in which said plaintiff's husband was shot, and

that as a result of said shooting he died, then said plaintiff is not entitled to recover.

"6. If the jury believe from the evidence that the deceased seized the conductor and pulled him off the car, then the conductor had a right to strike the deceased for the purpose of resisting, being pulled from the car, and if the jury further believe that deceased succeeded in pulling the conductor from the car and then engaged in a physical conflict with him, then the conductor had a right to resist any assault that deceased made on him, and even if the jury believe that the conductor did more than was necessary to resist such assault, and in doing so, shot deceased, yet the defendant is not liable for the conduct of such conductor, and the verdict must be for defendant.

"7. Although the jury believe from the evidence that the conductor voluntarily followed the deceased off the car, and there, and not upon said car, got into a physical conflict with him, and, as a result of such conflict, deceased was shot by the conductor as alleged, yet such voluntary act of the conductor in getting off of said car, and voluntarily engaging in a conflict with deceased and voluntarily shooting him, was no part of his duty as conductor, and defendant is not liable for the consequences of such shot, and the verdict must be for defendant."

From the principles above laid down we conclude that there was no error in instruction 2. It supposes the case in which the plaintiff's husband was the assailant and instead of being interfered with in leaving the car he dragged the conductor to the sidewalk and the combat there was the natural result of his own conduct.

Instruction 3 is erroneous. It supposes the case of the passenger's disorderly conduct while in the act of alighting in cursing and calling the conductor a vile name, thereby causing a breach of the peace, and the conductor in resenting the insult engaged in a fight with him on the street off the car, in which fight the passen-

ger was shot. The writer of that instruction had in mind the authority of the conductor to preserve the peace. A conductor is charged, for the protection of his passengers, with the duty of preserving the peace on the car of which he is in control. But in this instruction the duty of the conductor to preserve the peace in the interest of his passengers is merged in his own right to resent an insult. The instruction drops out of view, as if it were immaterial, the question of whether the conductor was dragged off of the car as defendant's evidence tended to prove or voluntarily followed the plaintiff's husband to the sidewalk and there undertook to preserve the peace.

It would be an extraordinary case, of which no example now occurs to us, that would justify a conductor in his capacity as a preserver of the peace to follow the offender to the sidewalk. And even in suppressing violent conduct to preserve the peace, the question of whether unnecessary force was used should be considered, and that question was omitted in the third instruction.

The fourth instruction is to the effect that if O'Brien struck the conductor before the latter had made any assault on him and a fight ensued on the street off the car, during which the conductor shot and killed O'Brien, the defendant is not liable.

Suppose it had all happened on the car—suppose O'Brien struck the conductor, and a fight ensued, and in the course of the fight the conductor drew his pistol and shot him—can we say with those facts and nothing more that the company was not liable? The law does not degrade the manhood of a conductor, he is entitled to resent an insult or repel an assault, but an insult or a blow does not, under all circumstances, justify the killing of the assailant. Even if the slayer was answering to an indictment in such case, he would have to show something more than that he had been insulted or struck in order to be entirely acquitted. But here we

are supposing a man who, although, it may be, was misbehaving, yet still was, in a measure, under the care and protection of this conductor, who was then and there *pro hac vice* the carrier itself; can it be said that because the man was abusive in his language and struck the conductor, the latter had the right to shoot him down? If the company would be liable under those facts if the killing occurred on the car, then it might or might not, according to circumstances, be liable if the killing occurred off the car. If, after striking the conductor, the deceased seized him and pulled him off of the car to the sidewalk and the fight there ensued the defendant would not be liable. But if after striking the conductor, the man was trying to get off the car and the conductor was holding him and beating him and thus followed him to the sidewalk, and killed him, the company would be liable. Instruction four, therefore, was erroneous.

The fifth instruction leaves out of view the question of whether the conductor after being struck by the deceased began "defending himself" by beating him with the butt end of his pistol as he was leaving the car and followed him still beating him to the sidewalk, as the plaintiff's evidence tends to prove, or was first assaulted and then dragged off of the car by the plaintiff's husband, as the defendant's evidence tended to prove. Under this instruction if the plaintiff's husband struck the conductor before leaving the car, then as a matter of personal defense the conductor had a right to follow the deceased off the car beating him with his pistol until they reached the sidewalk and then kill him without involving the defendant in liability for his act. That instruction should not have been given.

From what has already been said it was not error to give the sixth instruction, but it was error to give the seventh.

Vol 185 mo—18

The learned judge decided correctly in sustaining the motion for a new trial on account of errors in the instructions.

The judgment is affirmed.

All concur, except *Robinson, J.,* absent.