HENRY C. NEUER, Respondent, v. METROPOLI-
TAN STREET RAILWAY COMPANY, Appel-
lant.

**Kansas City Court of Appeals, April 4, 1910.**

1. **CARRIERS: Assault on Passenger by Conductor.** While a passenger who starts a controversy with an employee of the carrier cannot ordinarily complain of too vigorous a defense, yet where the employee beats him excessively and unreasonably, the carrier is liable.

2. ———: ———: **Master and Servant.** A carrier is responsible for the assault of a conductor upon a passenger while the latter is engaged in the performance of his duties, but not after the relationship of carrier and passenger has ceased.

3. ———: ——— : ———. Where the employee uses only such force as is reasonably necessary to defend himself there is no liability.

4. ———: ———: **Instructions.** An instruction authorizing a verdict for defendant if the plaintiff gave defendant's conductor reasonable cause for an assault is properly refused because its effect was to justify the action of the conductor even though he may have used unreasonable and unnecessary force after plaintiff had started the controversy.

5. ———: ———: ———. In a simple case there is no necessity for twenty-eight instructions on behalf of one of the parties.

6. ———: ———: **Exemplary Damages.** Where a conductor follows a passenger to the steps of the car and strikes him with an iron bar while he is in the act of getting off, the jury is justified in assessing exemplary damages.

7. **PLEADING: Special Damages.** Where plaintiff's petition charges mental derangement, evidence as to change of disposition is not without the issues.

8. ———: ———. Functional troubles which might result from an injury but do not necessarily so result, should be specially pleaded.

9. **DAMAGES: Excessive.** Under the evidence in this case a verdict for $5000 is not excessive.

Appeal from Jackson Circuit Court.—*Hon. J. E. Good-rich,* Judge.

AFFIRMED.

*John H. Lucas* and *Halbert H. McCluer* for appellant.

*Frank P. Walsh, F. W. Gifford* and *E. R. Morrison* for respondent.

BROADDUS, P. J.—This is a suit to recover damages for an alleged assault upon plaintiff by one of defendant's conductors in charge of a car upon which plaintiff was a passenger on February 7, 1904.

Plaintiff's evidence as related by himself was as follows: That he boarded the car in question down town for the purpose of going to his home. On his way he noticed that a woman sitting near him rang the bell for Twenty-fifth street. The conductor failed to stop the car. He said she did not ring the bell. She then asked plaintiff if he had not seen her ring the bell. He answered, yes. The conductor walked up in the front part of the car and looked like he was angry. When plaintiff got past Thirty-first street he rang the bell and got up from his seat and told the conductor that he wanted to get off at the next street. The car passed Thirty-first street at which time plaintiff was standing up waiting for it to stop at Spring street, his place for getting off. Thinking the car would not stop he said to the conductor he wanted to get off at that street, but the conductor paid no attention to his remark. The plaintiff then said, "I wonder if the motorman knows there is a Spring street here—a street that runs east and west." To this remark the conductor was also silent. Plaintiff then reached up and pulled the rope and as he did so the conductor grabbed him by the shoulders and pulled him back, which caused the rope

to break and plaintiff fell. He got up and said to the conductor: "Look here, young man, I want to get off the car." The conductor said: "God damn you, get out here." Plaintiff then said, "Never mind, leave me alone —I am going out as soon as the car stops—that is all I want, is to get out." Finally when the plaintiff walked to the rear part of the car he noticed that the conductor was following him and "hallooed" at him while he was standing on the platform, "get out of here, God damn you, get out here." As plaintiff got on the step of the car backing out the conductor struck him with an iron bar over the head and he fell to the street. The plaintiff received a serious injury from the blow.

A witness by the name of Brillo who was standing on the street nearby testified that he saw a man fall off the car and that he went to the man and saw blood flowing from his face and saw the conductor with a switch bar in his hand.

The defendant's evidence tends to show that the plaintiff brought about the trouble by the use of abusive language to the conductor; that when the car arrived at Thirty-second street the conductor got out to switch the car by the use of an iron rod and while proceeding to do so the plaintiff again applied to the conductor abusive epithets, whereupon he asked him if he intended the remarks for him. The plaintiff said he did and began approaching him in an angry and threatening manner when the conductor struck him a blow with the switch rod. The evidence as to who brought on the trouble preponderates much in favor of defendant.

The plaintiff recovered judgment for $5000 compensatory and $2000 for exemplary damages. Defendant appealed.

The first contention of defendant, that the court should have sustained its demurrer to plaintiff's case must be denied on the ground that it is not our duty to weigh the evidence or pass upon the credibility of witnesses. While the testimony of plaintiff in view of

the number of other witnesses introduced by the defendant is greatly overbalanced, yet his version of what occurred was not unreasonable or improbable of itself. Therefore the case does not fall within the rule as stated in Spohn v. Railroad, 87 Mo. 74; Whitsett v. Ransom, 79 Mo. 258; Garrett v. Greenwell, 92 Mo. l. c. 125.

The principal contention of defendant is that plaintiff's first instruction should not have been given. It is as follows:

"1. The court instructs the jury that the defendant owed to plaintiff while he was a passenger the duty to use the highest degree of care reasonably practicable to protect him from assault or violence, if any, and not to assault or strike him through its conductor in charge of said car; if, therefore, you believe and find from the evidence that on the 7th day of February, 1904, plaintiff was a passenger upon the car of the defendant in question and that while he was on said car, or was in the act of alighting from said car or before he had alighted therefrom in safety as explained in another instruction, he was struck and assaulted by the conductor in charge of said car without sufficient cause therefor, as explained in the other instructions given, and thereby bodily injuries were inflicted upon him, then your verdict should be for the plaintiff."

Explanatory instructions three and four read as follows:

"3. The court instructs the jury that even though you believe and find from the evidence that it was apparently necessary for said conductor, Davis, to defend himself, then he was justified in using no more force and violence in so doing than he was justified in reasonably believing was necessary under the apparent circumstances, and if he did use unnecessary and excessive force and violence in so defending himself, under the circumstances, and plaintiff was thereby injured, as submitted in the other instructions, then your verdict should be for the plaintiff.

"4. The court instructs the jury that even though you should believe and find from the evidence that the plaintiff used such language, as defined in the other instructions, as justified the conductor in ejecting him from the car, and the conductor did undertake to eject him from said car, then the conductor was not justified in using more force and violence, if any, than was reasonably necessary under the circumstances apparent at the time, to accomplish such ejection."

The objections are two in number. First: That it is not complete in itself, but refers to other instructions for explanation, whereas there was not such; and second: That although the conductor might not have had sufficient cause to have struck the plaintiff the blow complained of, yet if it was given during a combat voluntarily entered into by the plaintiff, no recovery should be permitted, which proposition of law the instruction negatives.

The first objection is clearly a misapprehension on the part of defendant as instructions three and four given for plaintiff are sufficiently explanatory of the first.

As to the second contention it is held that in a case where the passenger struck the conductor and then dragged him from the car to the sidewalk, it then became an affair between man and man and the carrier was not liable for what occurred on the sidewalk. [O'Brien v. Transit Co., 185 Mo. 263.]

In an action where the plaintiff was the original aggressor and had met with too vigorous a defense he was not entitled to recover. The theory of the court was that some latitude must be allowed on the ground of self defense. [Taylor v. Clendening, 4 Kan. 452.]

In a case where a disorderly passenger drew a pistol and the conductor armed himself to expel him from the train, and after the passenger had been expelled he used profane and abusive language which brought on a combat with pistols the carrier was held not to

be liable for the consequences to the passenger. [Peary v. Georgia R. Co., 81 Ga. 485, 8 S. E. 70.] If a man voluntarily enters into a fight for the sake of fighting, and not in self defense, he cannot recover, in an action for assault and battery against his adversary, unless the defendant beat him excessively or unreasonably." [Galbraith v. Fleming, 60 Mich. 403, 27 N. W. 581; Harrison v. Fink, 42 Fed. 787.]

The case of O'Brien v. Transit Co., supra, was again before the Supreme Court. On the second trial the defendant asked the court to instruct the jury that if the deceased brought on the difficulty plaintiff was not entitled to recover. The court held that such was not the law. [212 Mo. 59.] In a case where the defendant shot plaintiff it was held, that, while the law justifies a party in using such force as is reasonably necessary to protect himself, yet when the latter goes beyond the limits of what reasonably appears as necessary for the purpose he then becomes a trespasser and is to be held responsible for the unnecessary force. [Gallahan v. Billat, 68 Mo. App. l. c. 440; Orcheln v. Scott, 90 Mo. App. 352.] Such seems to be law in most of the States as promulgated by the opinions of their appellate courts.

In O'Brien v. Transit Co., 212 Mo. 59, the court emphatically repudiates the idea that the former decision held that if the deceased brought on the difficulty the plaintiff could not recover.

With some exceptions perhaps the rule is well established that notwithstanding one person may instigate a combat by insulting language or conduct, yet the law does not justify his adversary, on the plea of self defense, in the use of unnecessary or unreasonable force. And this rule applies to the relationship of carrier and passenger. A carrier is liable for the act of its conductor while engaged in the performance of his duty as such precisely as the conductor himself would be in a case of assault on such passenger. But after

the relationship of passenger and carrier has ceased the liability of the carrier for the acts of the servant no longer exist. And that is what we understand to have been the reason for the use of the language quoted in O'Brien v. Transit Co., supra, where the passenger seized the conductor, dragged him from the car and continued his assault after both had landed upon the sidewalk. But the court made clear its meaning when the case came before the court a second time. The defendant offered an instruction to the effect that if deceased brought on the difficulty the plaintiff could under no circumstances recover. The trial court refused the instruction. The Supreme Court said: "That is not the law, and that contention was expressly repudiated on the former appeal." [212 Mo. 59.]

The defendant's instructions given by the court embodies this theory of the law, with the qualification that if the conductor only used such force as appeared to him reasonably necessary to defend himself from the attack of the plaintiff the defendant would not be liable. We believe this to be good law and a proper qualification of those given on behalf of plaintiff. Such is the rule in criminal cases.

The defendant submitted twenty-eight instructions to the court to be given to the jury, eight of which were given and the remainder refused. Among those refused was one designated as "Q," which reads as follows: "If plaintiff gave the conductor in question reasonable cause for the assault, then your verdict will be for the defendant." If we are right in what has already been said there was no error in refusing this instruction as its purpose was to justify the action of the conductor notwithstanding he may have used unreasonable and unnecessary force in repelling plaintiff's assault.

As the court fully and fairly submitted defendant's side of the case in the instructions given, we do not feel that the duty is imposed upon us to discuss the pro-

priety of the action of the court in refusing the others. The case was not complicated as to matters of law or fact and consequently there was no necessity for the multitude asked.

Defendant insists that the evidence did not justify an instruction on the question of exemplary damages. It seems to us that if the conductor followed plaintiff to the steps of the car and struck him while he was in the act of getting off, such action evinced malice to an extraordinary degree. In such cases exemplary damages are always given.

Numerous objections are made to the action of the court in the admission and rejection of evidence, some of which we will notice. The doctor who treated plaintiff was asked what effect the wound on his head seemed to have upon him. The answer was: "It has changed his disposition." The objection made at the time was that such injury was not alleged in the petition. It is held that functional troubles which might result from an injury but not necessarily, should be alleged in the petition. [Thompson v. Railroad, 111 Mo. App. 474.] The petition alleges that as a result of the injury on the head plaintiff suffered mental derangement. We think we are justified in assuming that a derangement of the mind would necessarily have some effect on the disposition of the subject and create in time, more or less, a nervous condition.

And again objection is made as to proof of the permanency of plaintiff's injuries because not alleged. This is a misapprehension—permanency of plaintiff's injuries are alleged. Other objections we think are equally groundless both as to the action of the court in admitting and refusing evidence tendered.

Finally it is contended that the judgment is excessive. The plaintiff received a scalp wound about three inches long, that laid bare his skull. His skull was fractured resulting in a blood tumor in the eye, in the loss of his memory, and a change in his disposition; and

further his injuries were permanent. Under the circumstances if plaintiff's testimony is to be believed, and that was a question for the jury, the assault upon the plaintiff was not only unprovoked but was also of a most vicious character. And the injury, according to the doctor, was of great severity, resulting in the permanent impairment of both body and mind. Finding no error in the record the cause is affirmed. All concur.