## CHARLES B. WINSTON, Respondent, v. JAMES W. LUSK, W. C. NIXON, and W. B. BIDDLE, RE-CEIVERS OF THE ST. LOUIS & SAN FRAN-CISCO RAILROAD COMPANY, Appellants.

**Springfield Court of Appeals, December 31, 1914.**

1. CARRIERS: Passenger: **When Relation Begins.** Plaintiff having purchased a ticket presented himself at the steps of the defendant's coach to board the train, exhibiting his ticket. The brakeman denied his right to enter and assaulted him. Plaintiff held a passenger.

2. ————: Assault **on Passenger: Conflicting Evidence: For Jury.** Where there is a conflict of evidence whether the brakeman or the plaintiff passenger was the aggressor in an assault alleged to have been committed by the brakeman upon the passenger, the question was properly submitted to the jury.

3. INSTRUCTIONS: Curing **Omission by Other Instructions: Carriers: Assault.** In an action by a passenger for personal injuries because of an assault by defendant's brakeman, an instruction was given to find for plaintiff if he, under the circumstances mentioned, while attempting to board the car, was struck by the brakeman, and such striking was unjustifiable. The instruction is not erroneous because it failed to state the facts constituting justification, where they are stated in an instruction given for defendant.

4. CARRIERS: Duty to Passengers: **Insurers Against Assault by Employees.** A carrier is liable absolutely as an insurer for the protection of its passengers against assaults and insults at the hands of its servants.

5. ————: Assault **on Passenger by Brakeman: What Not a Defense.** That a brakeman assaulted a passenger, deliberately and without provocation, and merely to feed his personal grudge, does not excuse the carrier from liability on the ground that the brakeman was not acting within the scope of his duty.

6. INSTRUCTIONS: Request **That They be Made More Explicit: When Necessary.** An instruction as to damages *held* correct, though general in its scope. The defendant should, if he desired, have asked for more definite and explicit instructions pointing out the proper element of damages and excluding any improper element.

7. ———: Harmless Error. An error in an instruction in not limiting the amount of actual damages to the amount sued for, is rendered harmless by the fact that the jury entered a verdict for a much less amount.

8. DAMAGES: Discretion Allowed Jury. Large discretion is allowed a jury in awarding damages for personal injuries.

9. ———: Assault: Jury May Consider What. In an action by a passenger for damages because of an assault at the hands of a railroad brakeman, it is proper for the jury to consider that the assault was made at a public place, also the wounded feelings, humiliation and disgrace of the plaintiff as elements of actual damages in addition to his bodily injuries.

10. APPEAL AND ERROR: Assault on Passenger: Punitive Damages: Not Excessive When. Where an assault by a brakeman upon a passenger was wholly unwarranted and made merely for revenge, an award of $700 punitive damages is considered not excessive.

Appeal from Dunklin County Circuit Court.—*Hon. W. S. C. Walker,* Judge.

Affirmed.

*W. F. Evans, Moses Whybark* and *A. P. Stewart* for appellants.

(1) Plaintiff was the aggressor in the first fight on the depot platform, and the demurrer to the evidence under the first count of the petition should have been sustained. O'Brien v. Transit Co., 185 Mo. 269; McQuerry v. Railroad, 117 Mo. App. 255; Eads v. Railroad, 43 Mo. App. 536; Breen v. Transit Co., 108 Mo. App. 452. (2) The court erred in giving instruction number 1 for plaintiff as it fails to tell the jury what would constitute a justification for the alleged assault on plaintiff, and the jury were left to determine this question of law without any guidance by the court. Jordan v. Moulding Co., 72 Mo. App. 328. (3) The demurrer to the evidence under the second count of the petition should have been sustained. The difficulty between plaintiff and the brakeman on the train was

personal, and in furtherance of a personal grudge on the part of the brakeman, and in committing said assault the brakeman was not acting within the scope of his employment, and in the line of his duty, and his act did not pertain to the particular duties of his employment.   Hartman v. Muehlbach, 64 Mo. App. 565; Collette v. Rebori, 107 Mo. App. 711; McPeak v. Railroad, 128 Mo. 617; Faber v. Railroad, 116 Mo. 81; Raming v. Railroad, 157 Mo. 477; Drolshagan v. Railroad, 186 Mo. 258; Milton v. Railroad, 193 Mo. 46.  (4) Instruction number 3 given for plaintiff under the second count of the petition is erroneous because it attempts to authorize the assessment of both compensatory damages and punitive damages, and does not limit the compensatory damages to the amount sued for in the petition.   Spohn v. Railroad, 116 Mo. 633.

*Bradley & McKay* and *Fort & Zimmerman* for respondent.

(1)  Respondent was not the aggressor in the first assault.   State v. Harden, (S. C.) 2 Speers, 152-3; State v. Smith, 80 Mo. 516.   (2) It is a well-established rule of law in this State that carriers must treat their passengers with respect, and must endeavor to protect them from injury or insult, not only from their employees, but from strangers and fellow passengers. Spohn v. Railroad, 87 Mo. 74; Eads v. Railroad, 43 Mo. App. 536; McQuerry v. Railroad, 117 Mo. App. 255.   (3) The court will not reverse a case on an improper instruction unless the same is so misleading as to constitute prejudicial error, and affect substantial justice.   The instructions should be taken as a whole and considered together the ones given for plaintiff and those given for defendant, and it is to be presumed that the jury did their duty and considered the instructions together.   Sonnen v. Transit Co., 102 Mo. App. 274-276; Pendergrass v. Frisco, 162 S. W. 717;

Reams v. Jones D. G. Co., 99 Mo. App. 403; Benjamin v. Railroad, 133 Mo. 274; Robinson v. St. Joseph, 97 Mo. App. 503; Eckle v. Ryland, 165 S. W. 1035; McElhiney v. Shoe Co., 158 Mo. App. 318. (4) Respondent was a passenger when he purchased a ticket and was at the station for the purpose of entering one of appellant's cars. Berry v. Railroad, 124 Mo. 223; Schepers v. Union Depot R. Co., 126 Mo. 665; Railroad v. Franklin, 44 S. W. 701.

STURGIS, J.—This is a suit for personal injuries inflicted on plaintiff growing out of assaults on him by defendants' brakeman while the relation of carrier and passenger existed between plaintiff and the railroad company being operated by defendants as receivers. The petition is in two counts, covering separate assaults by the same employee of the defendants, the first occurring while plaintiff was attempting to board one of defendants' passenger trains at Kennett, Missouri, and the other about fifteen to twenty minutes later while the plaintiff was riding as a passenger on the same train.

The plaintiff, whose place of business was at Kennett, Missouri, purchased a ticket there one Sunday morning in order to go to Holcomb, Missouri, a few miles distant, to visit his mother. When the passenger train stopped and the passengers getting off there had alighted, the plaintiff, with other passengers, started to board the train. Defendants had a rule requiring all intended passengers to exhibit their tickets before boarding the cars. The defendants' brakeman assisted those getting off and took his position at the foot of the steps leading up to the passenger coach to enforce this rule and look after the loading of the passengers. Some three or four young ladies passed up the steps just ahead of the plaintiff and the brakeman says that one of them being without a ticket designated the plaintiff as having her ticket and he al-

lowed her to pass on. The plaintiff denied that he was accompanying or even knew this young lady or had any knowledge of her being allowed to enter the car on her representation that he had her ticket. He exhibited his ticket to the brakeman and started to ascend the steps. Here the evidence diverges. The plaintiff says the brakeman, without any explanation whatever other than to say "you are not going to ride on that," meaning the ticket exhibited, jerked him off the steps to the ground, causing him to drop his overcoat and umbrella and further assaulted him, which he resented, ending in a fight until the two were separated. The brakeman says that he told plaintiff that two could not ride on his one ticket and that he had allowed a lady to pass on that ticket and refused to allow plaintiff to go up the steps without another ticket; that he used no more force than to pull plaintiff back and bar his way up the steps; that plaintiff became angered and struck him in the face, whereupon they clinched and scuffled until separated. The brakeman denies striking the plaintiff at this time. After this difficulty was over the plaintiff had a few scratches about his face and neck and one of his little fingers was severely injured, but this latter injury was caused by plaintiff's fist coming in violent contact with the brakeman's face, causing his nose to bleed freely. The plaintiff was found to have blood on his hands and clothes, but this also largely came from the brakeman's nose. The plaintiff's evidence, however, was that after he was jerked to the ground and lost his overcoat and umbrella the brakeman got between him and the steps and struck at him, either with his hand or fist, and "scratched him in the eye" and not until then did plaintiff strike the brakeman.

If plaintiff's version of the affair is correct, and the jury has so found, then the brakeman was to blame in every way, as he not only wrongfully prevented

plaintiff from entering the car but pulled him back rudely and with unnecessary violence and assaulted him after he was down on the platform. The plaintiff's striking the brakeman was in self-defense and in protection of his rights as a passenger, for the relation of carrier and passenger then existed though the plaintiff had not yet entered the car but was only trying to do so. [Bledsoe v. Railroad, decided at this term, and cases cited. See also Schepers v. Union Depot R. Co., 125 Mo. 665, 673, 29 S. W. 712.] In such case it is but fair to hold the defendants responsible for all the injuries suffered by plaintiff, even to the injury to his finger resulting from his striking the brakeman, though the instructions given by the trial court hardly went that far.

On this branch of the case the court instructed the jury that if the plaintiff had purchased his ticket entitling him to transportation and that ''while attempting to board said train in the usual and ordinary manner, he was struck on the head, arms, breast or body by an agent and employee of the defendants, and that such striking, if you find such to be a fact from the evidence, was not justifiable, and you further find that he was injured by said assault, then your verdict will be for the plaintiff.'' For the defendants, the court instructed that if ''before plaintiff had boarded said train, the plaintiff and defendants' brakeman engaged in a controversy as a result of a mistake on the part of said brakeman as to plaintiff's right to board said train, and during such controversy the plaintiff struck the brakeman, then you are instructed that said brakeman had the right to defend himself, and to use such force as was reasonably necessary to repel plaintiff's assault, and if you further find that said brakeman used no more force than was reasonably necessary for that purpose, then plaintiff cannot recover on the first count in his petition, but your verdict should be for the defendants on said first count.''

The first count of the petition alleges that this assault was wanton and malignant and asks for punitive damages but the court directed the jury not to award any punitive damages. Under these instructions the jury returned a verdict under this count for $250 actual damages.

The defendants' first point is that the plaintiff was the aggressor and that, notwithstanding the defendants' duty to plaintiff as a passenger, the brakeman had a right to defend himself from plaintiff's assault and that a demurrer should have been sustained to this count on the authority of O'Brien v. Transit Co., 185 Mo. 263, 269, 84 S. W. 939, and Breen v. Transit Co., 108 Mo. App. 443, 451, 83 S. W. 998. There is substantial evidence, however, that the brakeman was the aggressor in this assault, as well as being in the wrong in attempting to prevent plaintiff from going into the car, and the court did right in submitting the question to the jury as it did in both of the cases just cited.

Plaintiff's instruction, above mentioned, is criticised as submitting to the jury a mixed question of law and fact, whether the brakeman's assault on plaintiff was *justifiable* and that the jury should have been told what facts would constitute a justification. An instruction similar to this, and equally as objectionable in this respect, was held not to constitute error in Sonnen v. Transit Co., 102 Mo. App. 271, 274, 76 S. W. 691. We approve what the court there said. "Two opposing theories of the assault are presented by the pleadings and the evidence; the plaintiff's, that an unprovoked assault was made upon him, the defendant's, that the assault was justified. It was the duty of each party to the suit to take care of his own side of the case and to offer instructions covering his theory of the case as set out in his pleadings and sustained by his evidence. The instruction under review comprehends very fully all the facts which plaintiff relied on and which entitle him to the verdict, and is supported

by the evidence offered by him, therefore it was appropriate.'' In this case, as in that one, the jury were told in an appropriate instruction given for defendant, as above mentioned, what facts in evidence constitutes a justification of the brakeman's assault on plaintiff. Both theories of the case were properly presented to the jury. The defendants' real grievance arises from the fact that the jury did not believe their version of the affair.

The defendants do not attempt to justify the second assault made by this brakeman on the plaintiff. It occurred on the train and in what is termed the ladies' coach some fifteen minutes after the first assault. After the first difficulty with plaintiff, the conductor interfered and sent the brakeman to do some other work and permitted plaintiff to enter the passenger coach. The plaintiff, after washing off the blood from the first encounter, took a seat with a friend therein and the train proceeded on its way. The tickets were taken up by the conductor and it is significant that no young lady was found therein without a ticket. This brakeman, though admonished by the conductor not to. have any further difficulty, deliberately hunted up the plaintiff for the avowed purpose of ''whipping him if he could.'' He seems to have been smarting because of the unsatisfactory termination of the first difficulty and made up his mind, as he expressed it, that no man ''could hit him on the nose and get away with it.'' When he located plaintiff on the seat in the passenger coach, he asked him if he was the man who hit him at the steps and on plaintiff answering in the affirmative again assaulted him and, as he says, hit him full in the face. Plaintiff says, however, that he dodged this blow and that it did not injure him as seriously as was intended. These parties had to be again separated to end this fight. There is no doubt that this second assault was deliberate, unprovoked and for revenge. The defendants' only attempt at a justifica-

tion for this assault is that it was personal to the brake-
man, in furtherance of a personal grudge on his part
and in committing this assault the brakeman was not
acting within the scope of his duty. We cannot better
answer this contention than by quoting from O'Brien
v. Transit Co., 185 Mo. 263, 268-9, 84 S. W. 939, as
follows: ''While the passenger is in the carrier's
vehicle he is entitled to protection from assault even
from strangers, if by the exercise of the degree of care
devolving on the carrier it can be afforded, and *a
fortiori* the carrier owes it to his passenger not to
maltreat him by the hands of its own servants. [Hutch-
inson on Carriers, secs. 595-6.] Quoting again from 3
Thompson on Negligence, secs. 3185, 3186, the author
says that the law implies not only an agreement to
carry safely, 'but also an agreement for kind, consid-
erate, respectful and decorous treatment to the passen-
ger at the hands of the carrier's own servants. . . .
The carrier is liable absolutely, *as an insurer,* for the
protection of the passenger against assaults and insults
at the hands of his own servants, because he contracts
to carry the passenger safely and to give him decent
treatment *en route.'* . . . If a stranger on the car
had done to this man what the evidence for plaintiff
tends to show the conductor (brakeman) did, and if the
conductor (brakeman) could have prevented the wrong
by the exercise of a very high degree of care and failed
to do so, the defendant would have been liable; with
what stronger reason, therefore, is the defendant lia-
ble when the conductor (brakeman) himself is the of-
fender.'' And, in Eads v. Met. St. Ry. Co., 43 Mo.
App. 536, 545, this language is used: ''The carrier
is responsible for the malicious and wanton acts of the
servant to a passenger whether done in the line of his
employment or service or not, if done during the course
of the discharge of his duty to the master which re-
lates to the passenger. For he owes him, as before
stated, not only carriage, but protection also, and if he

furnishes a servant who, instead of protecting, insults or assaults, or beats the passenger, he has directly failed of his duty to the passenger.'' [See also Spohn v. Railroad, 87 Mo. 74, and 116 Mo. 617, 632, 22 S. W. 690.]

The plaintiff's instructions are also criticised as being misleading on the measure of damages. The instructions covering plaintiff's case on each count, and authorizing a recovery on the facts hypothesized, wind up by saying, ''and you should assess his damages at such sum as in your judgment will compensate him for the injuries so received, if any, by virtue of said assault not to exceed the sum of $2000; the amount sued for. These instructions are not erroneous in their general scope and are such as have often been held sufficient on plaintiff's part and leave to the defendant the privilege and duty, if he desires to do so, to ask more definite and explicit instructions pointing out the proper elements of damages and excluding any improper element. [Smith v. Fordyce, 190 Mo. 1, 30, 88 S. W. 679; Strayer v. Railroad, 170 Mo. App. 514, 529, 156 S. W. 732; Powell v. Union Pac. R. Co., 255 Mo. 420, 164 S. W. 628.] Plaintiff's third instruction is likewise general as to the actual damages, and, without limiting the amount to that sued for, then predicates the elements of wantonness and wilfullness authorizing an award of punitive damages. The error in this instruction in not limiting the amount of actual damages to the amount sued for is rendered harmless by the fact that the jury rendered a verdict for a much less amount, to-wit, $250.

We have also considered the question of excessive actual damages on each count, but, considering the fact that the jury must be given a large discretion in awarding damages for personal injuries and that these successive assaults were made at a public place and that the jury properly considered plaintiff's wounded feelings, humiliation and disgrace as elements of actual

damages in addition to his bodily injuries, we cannot say that the same are grossly excessive. The second assault, for which alone punitive damages were awarded, was so peculiarly unwarranted and made for revenge only that we will not reverse the case because of an award of $700 punitive damages. While we recognize the just doctrine of *respondeat superior* in cases of this character, we regret that the real culprit, the brakeman, is not a defendant jointly with the master and made to bear a part of this burden.

It results that the judgment is affirmed.

*Robertson, P. J.,* and *Farrington, J.,* concur.